PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2643
_____

ZAMAN SATTAUR HANIF,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(Agency No. A093- 306- 556)
Immigration Judge: Honorable Andrew Arthur
_____

Argued April 11, 2012
_____

Before: HARDIMAN, GREENAWAY, JR. and
GREENBERG, *Circuit Judges*.
(Opinion Filed: September 14, 2012)

1

_____

OPINION

_____

Ryan A. Muennich, Esquire (argued)
Muennich & Bussard
30 Vesey Street
16th Floor
New York, NY 10007
        *Counsel for Petitioner*

Mary A. Kenney, Esquire
Benjamin R. Winograd, Esquire (argued)
American Immigration Council
1331 G Street, N.W.
Suite 200
Washington, DC 20005
        *Counsel for Amicus*

Eric H. Holder, Jr., Esquire (*Did not enter an appearance*)
Rachel L. Browning, Esquire (argued)
Joseph D. Hardy, Jr., Esquire
Thomas W. Hussey, Esquire
Justin R. Markel, Esquire
Blair O'Connor, Esquire
United States Department of Justice
Office of Immigration Litigation
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

GREENAWAY, JR., *Circuit Judge*.

Petitioner Zaman Sattaur Hanif ("Hanif" or "Petitioner") seeks review of the decision of the Board of Immigration Appeals ("BIA")[1] finding him statutorily ineligible for relief from removal under 8 U.S.C. § 1182(h).[2] Applying the precedent of Matter of Koljenovic, 25 I. & N. Dec. 219 (BIA 2010), the BIA found that Hanif was a lawful permanent resident ("LPR"), and that his date of admission was May 17, 2006, the date he was granted LPR status. Thus, he had not satisfied the seven years of continuous residence required by the statute. Hanif argues that the language of the statute is clear, and that he has never been "admitted"[3] to the

---

[1] In lieu of issuing its own opinion, the BIA adopted and affirmed the decision of the Immigration Judge ("IJ").

[2] The BIA based its decision on the following sentence in subsection (h): "No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States."

[3] "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the

United States "as an alien lawfully admitted for permanent residence."[4]  Rather, he acquired his LPR status while in the United States, never having been admitted for that purpose.

For the reasons set forth below, we find that the language of the statute is clear and unambiguous on its face.  Therefore, we will accord no deference to the BIA's interpretation, which we find to be at odds with the wording and clear meaning of the statute.  We will grant the petition, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

## I.     Facts/background

Hanif is a citizen of Guyana currently detained by immigration authorities pending the outcome of his removal proceedings.  Although the exact details are not clear, Hanif entered the United States on a fraudulent visa at some point during the 1980s.[5]  After his marriage to Shakirah Hattim, a

---

United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

[4]  "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).

[5]  An August 11, 2009 Presentence Investigation Report ("PSI") prepared for the United States District Court for the Eastern District of New York states that Hanif

naturalized citizen, Hanif applied for a waiver of his ground of inadmissibility. On May 17, 2006, a New York Immigration Judge ("IJ") granted Hanif's application and adjusted Hanif to LPR status. Prior to his detention, Hanif resided in the Bronx, New York with his wife and two children. Also living in the Bronx area are Hanif's parents and five siblings, all either naturalized citizens or lawful permanent residents.

According to the PSI, in June of 2008, Minoutie Khadoo, a girlfriend of Hanif's nephew, was arrested for possession of a forged instrument. In exchange for reduced charges against Khadoo, Hanif turned over $5,100 in counterfeit bills to the New York State Office of Tax Enforcement ("OTE") and offered to cooperate and work with the OTE and the United States Secret Service in their ongoing counterfeiting investigation. However, after a request by the Secret Service to take a polygraph examination, Hanif fled the country. On August 22, 2008, a warrant for Hanif's arrest was issued by the United States District Court for the Eastern District of New York.

In early December 2008, the Secret Service was notified that Hanif would fly to the United States from

admitted to entering the United States illegally as an adult in the 1980s. The PSI noted that Hanif "stated that he entered the United States illegally," approximately two years after his parents immigrated in 1986. The PSI also stated that "according to the Pretrial Services Report, the defendant advised that he illegally immigrated to the United States in 1984." (Admin. R. 156.)

5

Guyana to surrender. Hanif arrived at John F. Kennedy International Airport on December 16, 2008. He was arrested and paroled into the United States for purposes of prosecution for counterfeiting. On May 12, 2009, Hanif pled guilty to dealing in counterfeit United States currency, 18 USC § 473, and, on September 8, 2009, was sentenced to four months in prison.

On December 8, 2009, the Department of Homeland Security served Hanif with a "Notice to Appear," charging him with inadmissibility by virtue of his federal conviction under the Immigration and Nationality Act 8 U.S.C., § 1182(a)(2)(A)(i)(I).[6] On January 21, 2010, Hanif conceded his inadmissibility as charged. Hanif then sought a waiver of inadmissibility under 8 U.S.C. 1182(h)[7] and submitted the

---

[6] Section 1182(a)(2)(A)(i)(I) provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime" is ineligible to receive visas and ineligible to be admitted to the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(I).

[7] The pertinent clause in section 1182(h) reads "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of

6

corresponding I-601 Application for Waiver on Ground of Excludability on February 17, 2010, claiming that removal would cause extreme hardship to his wife and children.

On January 11, 2011, an IJ denied Hanif's application, finding him ineligible for a waiver under 8 U.S.C. 1182(h), pursuant to the BIA's decision in Matter of Koljenovic. Specifically, the IJ noted that "the Board of Immigration Appeals held [in Matter of Koljenovic] that an alien who entered the United States without inspection and later obtained lawful permanent residence [sic] status through adjustment [of] status has previously been 'admitted as a lawful permanent resident, and therefore, must satisfy the seven year continuous residence requirement at Section 212(h).'" (Admin. R. 53-54.) On May 27, 2011, the BIA adopted and affirmed the IJ's order. On June 17, 2011, Hanif petitioned this Court for review of the BIA's decision.

## II.    Jurisdiction

The BIA has jurisdiction to review the IJ's decision under 8 C.F.R. § 1003.1(b)(3). In general, "courts of appeals . . . have no jurisdiction to review [the BIA's] discretionary and factual determinations presented in petitions for review." Jarbough v. Att'y Gen., 483 F.3d 184, 188 (3d Cir. 2007). However, this Court has jurisdiction, pursuant to 8 U.S.C. § 1252(a)(2)(D), to review the BIA's final order for constitutional claims and questions of law. See Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006) ("By virtue of

proceedings to remove the alien from the United States." 8 U.S.C. § 1182(h).

7

§ 1252(a)(2)(D), constitutional claims or questions of law raised in a petition for review elude the jurisdiction-stripping provisions of the INA."). Petitioner challenges the BIA's statutory interpretation of 8 U.S.C. § 1182(h), thus raising a question of law within the meaning of § 1252(a)(2)(D). Accordingly, we can exercise jurisdiction over this petition for review.

### III. Standard of Review

When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ. Sheriff v. Att'y Gen., 587 F.3d 584, 588 (3d Cir. 2009). When, however, the Board adopts and affirms the IJ's decision, as it did here, we have authority to review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009) ("Inasmuch as the BIA deferred to the IJ's credibility determinations and adopted the reasons the IJ set forth, we have authority to review both determinations." (quoting Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004)).

"The BIA's factual findings are reviewed for substantial evidence." Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007) (citing 8 U.S.C. § 1252(b)(4)(B)). We review legal determinations de novo, subject to the principles of deference articulated in Chevron v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984). Id. at 228.

### IV. Analysis

When considering the propriety of an agency's interpretation of a statute, we must turn to the analytical structure set forth by the Supreme Court in Chevron. 467

U.S. at 842-43. "Under the familiar two-step Chevron inquiry, first, if the statute is clear we must give effect to Congress'[s] unambiguous intent, and, second, if the statute is silent or ambiguous with respect to a specific issue, we defer to an implementing agency's reasonable interpretation of that statute." De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 348 (3d Cir. 2010).

Regarding the first step, the Supreme Court noted that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, 467 U.S. at 843 n.9 (citations omitted).

We have adopted limitations on the first step of the Chevron test.

> As this Court has observed, "a blind adherence to the literal meaning of a statute [could] lead to a patently absurd result that no rational legislature could have intended. Following the letter, rather than the spirit, of the law in such cases would go against the court's role of construing statutes to effectuate the legislature's intent."

Barrios v. Att'y Gen., 399 F.3d 272, 277 n.11 (3d Cir. 2005) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 569 (3d Cir. 2002) (in turn citing United States v. Schneider, 14 F.3d 876, 880 (3d Cir. 1994) ("It is the obligation of the court

9

to construe a statute to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose.")).

As to the second step, the Supreme Court stated that a "court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n.11.

Petitioner and amicus argue that the language of the statute is clear, and this Court therefore need only read the statute in order to conclude that it does not apply to him. That is, according to Petitioner, he was never "admitted" to this country "as an alien lawfully admitted for permanent residence." Although his status is that of "an alien lawfully admitted for permanent residence," as defined by 8 U.S.C. § 1101(a)(20), he has never been admitted to the United States, since he originally entered the country illegally.

Although asserting that we need not go beyond the plain meaning of the statute, Petitioner also argues that the statute's legislative history supports his position. Noting that Congress amended § 1182(h), § 1229b(a) and the definition of "admission" in § 1101(a)(13)(A) at the same time, Petitioner concludes that the differences among these sections indicate Congress's clear intent to differentiate among them. Specifically, Petitioner notes that Congress used "lawfully admitted for permanent residence" in § 1229b(a) without using "admitted" as an additional modifier, while it used both terms in § 1182(h).

We agree with Petitioner that the statute is clear and unambiguous. In § 1182(h), Congress used specific terms defined in the statute. Absent any indication to the contrary, we must presume that Congress intended to give those terms the meaning ascribed to them elsewhere in the statute. See, e.g., Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574 (2006) ("[W]e presume that the same term has the same meaning when it occurs here and there in a single statute."). Cf. FCC v. AT&T, Inc., 131 S.Ct. 1177, 1182 (2011) ("When a statute does not define a term, we typically 'give the phrase its ordinary meaning.'" (quoting Johnson v. United States, 130 S.Ct. 1265, 1270 (2010))). Further, as the Supreme Court has often stated, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).

Congress clearly only placed limitations on waivers available to aliens who were previously admitted as an alien lawfully admitted for permanent residence. This phrase requires not only a prior admission to the United States, but also that the prior admission has been made while the alien was in the status of a lawful permanent resident. We perceive no other meaning from the language of the statute.

The government holds a different view, arguing that § 1182(h) is ambiguous and therefore cannot be read in isolation, but must be read in the context of the entire statute. Examining the full statute, the government, like the BIA, concludes that the date of Hanif's adjustment of status should be considered to be his date of admission. Therefore, according to the government, the BIA correctly concluded that Hanif did not have more than seven years of residency, thus rendering him ineligible for the waiver.

11

At first blush, the government's argument has some appeal. Pointing to the language of 8 U.S.C. § 1255(b), which provides that "the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made," the government contends that Congress clearly stated that the date of the adjustment of status is the date of admission. When the Attorney General enters the order adjusting the status of the alien, "the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current." Id. However, upon closer inspection, this argument fails because Congress adopted specific definitions of "admission" and "lawfully admitted for permanent residence," which distinguish between the two terms. Notably, in 8 U.S.C. § 1101(a)(13)(A), Congress treated "admission" as an event or action, while in 8 U.S.C. § 1101(a)(20) Congress regarded "lawfully admitted for permanent residence" as an immigration status. The date of gaining a new status is not the same as the date of the physical event of entering the country. We perceive the recording requirement of § 1255(b) to be a ministerial provision relating to the monitoring and control of the number of visas available in any given year, rather than an effort by Congress to amend the definitions of "admitted" and "lawfully admitted for permanent residence" set forth in § 1101(a).

The government also points to the legislative history of IIRIRA in support of its assertion that the date of the adjustment of status should be considered the date of admission. The government focuses on two points: (1)

statements expressing Congress's intent to streamline deportation through the amendments and (2) the fact that the House Conference Report accompanying IIRIRA indicated that the continuous residency requirements established in § 1229b(a) should also be applied to § 1182(h).

While considering Congress's intent with regard to maintaining some parallelism between § 1182(h) and § 1229b(a) could potentially be appropriate, the language adopted in the two sections does not support the government's position since the two sections differ in a significant way. Section 1229b(a) provides that

> [t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien--
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a).

As we recently observed in Nelson v. Att'y Gen., 685 F.3d 318 (3d Cir. 2012), the clear language of this section distinguishes between "an alien lawfully admitted for permanent residence" and an alien "admitted in any status." In Nelson, we noted that, contrary to Nelson's argument,

the "after having been admitted in any status" language simply means that the seven-year period need not accrue entirely after admission as a lawful permanent resident. The "in any status" phrase could show congressional recognition that an alien may initially be admitted to the United States in some other status (e.g., on a student visa, as a refugee, or some other nonimmigrant status) and receive an adjustment of status to a permanent resident sometime later. Under this interpretation, the statutory language merely clarifies that such an alien does not begin accruing time towards the seven-year period only after his adjustment to permanent resident status. Rather, the alien immediately begins accumulating time following his initial admission, regardless of the status.

Id. at 323 (emphasis omitted).

Additionally, as Petitioner notes, Congress chose to not use "admitted" in conjunction with "lawfully admitted for permanent residence" in § 1229b(a), as it did in § 1182(h). The omission of this additional modifier creates a significant distinction between the two sections.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." . . . We refrain from concluding here that the differing language in the two

subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.

Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)).  Here, we cannot omit the additional modifier "admitted" from § 1182(h), nor can we insert it into § 1229b(a) in order to conform the statute to the government's interpretation.  Rather, we must read the statute as written, noting the differences between these two sections.

The government further argues that a literal reading of the statute produces the absurd result of Hanif being an LPR who was never admitted to the country.[8]  In a slightly different context, we have considered whether a rational basis supports Congress's enactment of § 1182(h).  DeLeon-Reynoso v. Ashcroft, 293 F.3d 633 (3d Cir. 2002).  In De Leon-Reynoso, the petitioner argued that § 1182(h) violated the Equal Protection Clause since that section treated different LPRs differently.  Specifically,

---

[8] Similarly, the government suggests an absurd result would occur by applying Hanif's interpretation since an alien entering the country without inspection would not be eligible for relief under § 1229b(a).  Given the fact that § 1229b(a) does not use "admitted" as a modifier for "lawfully admitted for permanent residence," we find the government's reasoning on this point to be unpersuasive.

15

De Leon argues that § 1182(h) violates the equal protection component of the Fifth Amendment's Due Process clause by making an impermissible distinction between two categories of aliens who are not permitted to reside in the United States: those who have not previously been lawfully admitted to the United States (i.e., non-LPRs) and those who have been previously admitted to the United States but have not resided in the United States for seven consecutive years before removal proceedings are initiated (LPRs).

Id. at 638. We found § 1182(h) to be constitutional, observing that since "Congress conceivably had good reasons to create the § 1182(h) distinction, we hold that the distinction survives rational basis scrutiny." Id. at 640. We did note that "[o]ur holding that the § 1182(h) distinction survives rational basis scrutiny should not be mistaken for an endorsement of the policy." Id.

The conclusion in De Leon-Reynoso limits our ability in the present case to consider whether the plain meaning of the statute produces an absurd result. While concluding that a rational basis exists for treating different types of LPRs differently is not the same as deciding that a literal interpretation of the statute would produce an absurd result, our earlier decision is instructive. Conceivably, Congress could have had reasons to treat LPRs differently based on whether or not they were admitted to the United States in that status.

Even absent the holding in De Leon-Reynoso, we would not conclude that giving the statute its literal meaning

16

produces an absurd result. We acknowledge that giving the statute its literal meaning results in situations such as here, where Hanif, having entered the United States illegally, technically was never "admitted" to the country as defined in § 1101(a)(13)(A). However, Congress has long been aware of the fact that aliens may enter the country without inspection and later adjust to LPR status.[9] The statute, in fact, allows for just this situation. See 8 U.S.C. § 1255(i). While we find this situation awkward, we cannot substitute our judgment for that of Congress. We can, and in fact, must, give the statute the meaning Congress intended. Further, "'[t]he fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.'" Lockhart v. United States, 546 U.S. 142, 146 (2005) (quoting Union Bank v. Wolas, 502 U.S. 151, 158 (1991)). "In light of these plausible explanations . . . , we cannot say that adherence to the statute's plain text would be absurd." Fogelman, 283 F.3d at 570.

Similarly, after finding the statute's meaning to be clear, the Fifth Circuit considered whether this interpretation

---

[9] Congress acknowledged that aliens may attempt to enter the country without inspection in the definition section of the statute. Section 1101(a)(13)(C)(vi) provides that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien-- . . . has not been admitted to the United States after inspection and authorization by an immigration officer."

would produce an absurd result, and found that it would not. Rather, the Fifth Circuit surmised that the distinction between aliens admitted to the United States as LPRs and aliens who convert to LPR status while in the country may have been Congress's first step in reaching its goal of expediting the removal of criminal aliens. Martinez, 519 F.3d at 545.[10]

All other circuits that have considered the language of subsection (h) have reached the same conclusion as we do here; namely, that the statute clearly requires both an "admission" and that the "admission" have been made by "an alien lawfully admitted for permanent residence."[11]

## V. Conclusion

In sum, under the first step of the Chevron test, we find that the meaning of the statute is clear and unambiguous. Given the clarity of the statute, we need not reach the second step of the Chevron test. We will grant the petition, vacate the BIA's decision and remand this matter to the BIA for further proceedings consistent with this opinion.

---

[10] The Fourth Circuit agreed with the Fifth Circuit's reasoning on this point. Bracamontes v. Holder, 675 F.3d 380, 389 (4th Cir. 2012).

[11] Bracamontes, 675 F.3d at 385-6; Martinez, 519 F.3d at 544, 546; Lanier v. Att'y Gen., 631 F.3d 1363, 1366-67 (11th Cir. 2011).

18