In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2372

DIMITRIOS PAPAZOGLOU,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent.*

On Petition For Review of an Order of the
Board of Immigration Appeals.
No. A070-422-780

ARGUED NOVEMBER 30, 2012 — DECIDED AUGUST 6, 2013

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Petitioner Dimitrios Papazoglou
("Papazoglou") is a native and citizen of Greece who entered
the United States on a B-2 visitor's visa on July 19, 1986. A little
over a year later, in September 1987, he married a U.S. citizen,
Hariklia Papazoglou ("Hariklia"), and based on that marriage
he adjusted his status to lawful permanent resident on

July 16, 1990. He has four children: a U.S. citizen stepson, Alex; a permanent resident daughter, Eleni; a U.S. citizen son Konstandinos; and a U.S. citizen son Mehalis.

On April 4, 2008, Papazoglou pled guilty to third-degree sexual assault under Wis. Stat. § 940.225(3) and physical abuse of a child in violation of Wis. Stat. § 948.03(3)(b). He was sentenced to 2 ½ years' imprisonment and 4 ½ years probation.

Based on his conviction of an aggravated felony, the Department of Homeland Security (DHS) charged Papazoglou with removability under the Immigration and Nationality Act (INA) § 237(a)(2), 8 U.S.C.A. § 1227(a)(2)(A)(iii). Before the Immigration Judge ("IJ"), Papazoglou filed a Form I-485 application for adjustment of status pursuant to INA § 245(s) based on his marriage to a United States citizen, 8 U.S.C. § 1255(a), and in conjunction with that he filed a Form I-601 application for waiver of grounds of inadmissibility under INA § 212(h), which would allow him to obtain a waiver of the inadmissibility arising from that aggravated felony conviction. 8 U.S.C. § 1182(h). The IJ granted the waiver and the adjustment of status, and the government appealed that decision to the Board of Immigration Review (the "Board"). Reviewing the IJ's decision *de novo*, the Board agreed with the government that Papazoglou was statutorily ineligible for the waiver. The Board also held that even if Papazoglou were eligible for the waiver, he would not be entitled to it as a matter of discretion. Papazoglou has appealed that determination to this court.

Our jurisdiction to review such decisions of the Board is limited. The Board held that Papazoglou was removable based

on his commission of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, precludes judicial review of such removal decisions. 8 U.S.C. § 1252(a)(2)(C); *Vaca-Tellez v. Mukasey*, 540 F.3d 665, 668 (7th Cir. 2008). The REAL ID Act of 2005 provides, however, that judicial review is available for constitutional claims or questions of law presented in a petition for review, and therefore we are precluded only from considering challenges that do not fall within those categories such as the Board's discretionary determinations. *Id.* at 668-69; 8 U.S.C. § 1252(a)(2)(D); *Hanif v. Atty. General of the United States*, 694 F.3d 479, 483 (3d Cir. 2012). Therefore, in a challenge to the denial of a § 212(h) waiver, the court lacks jurisdiction to review the Attorney General's discretionary determination, but may review questions of law presented by the Board's construction of § 212(h). *Vaca-Tellez*, 540 F.3d at 669; *Martinez v. Mukasey*, 519 F.3d 532, 541 (5th Cir. 2008).

Papazoglou raises two arguments here. The first is that the Board erred in determining that he was statutorily ineligible for the § 212(h) waiver. Papazoglou argues that the Board improperly interpreted the statutory language, and that he was eligible for a § 212(h) waiver under the language of that statutory provision. That challenge is a legal one, which we review *de novo*. *Klementanovsky v. Gonzales*, 501 F.3d 788, 791 (7th Cir. 2007).

Papazoglou also contests the Board's decision that it would not grant the waiver as a matter of discretion. Because we lack jurisdiction to review discretionary decisions, Papazoglou attempts to recharacterize that argument, contending that the

Board erred as a matter of law in that it failed to defer to the IJ's fact findings and it did not properly consider the evidence in the record. Accordingly, Papazoglou maintains that we have jurisdiction to review that legal error.

Section 212(h) gives the Attorney General the discretion to allow noncitizens to enter or remain in the United States despite their commission of certain crimes. Prior to 1996, the only aliens categorically barred from receiving § 212(h) waivers were aliens who had been convicted of murder or criminal acts involving torture, or the attempt or conspiracy to commit such crimes. *Leiba v. Holder*, 699 F.3d 346, 348-49 (4th Cir. 2012); *Jankowski-Burczyk v. INS*, 291 F.3d 172, 175 (2d Cir. 2002). The Immigration Reform and Immigrant Responsibility Act of 1996, (IIRIRA) created a new category of ineligible aliens in § 212(h), providing that "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if … since the date of such admission the alien has been convicted of an aggravated felony … ." 8 U.S.C. § 1182(h); . *Leiba*, 699 F.3d at 348-39; *Jankowski-Burczyk*, 291 F.3d at 175 -76. Under *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-44 (1984), in considering the scope of that provision, we determine whether to grant deference to the Board's interpretation by applying a two-part test. *EEOC v. Thrivent Financial for Lutherans*, 700 F.3d 1044, 1049 (7th Cir. 2012); *Arnett v. C.I.R.*, 473 F.3d 790, 793 (7th Cir. 2007); *Leiba*, 699 F.3d at 348; *Martinez*, 519 F.3d at 542-43; *Hanif*, 694 F.3d at 483. First, if the statute is unambiguous and has spoken directly to the precise issue such that the intent is clear, we simply give effect to that intent. *Id*. The plain language of the statute is the most

instructive and reliable indicator of that Congressional intent. *Thrivent Financial*, 700 F.3d at 1049; *Martinez*, 519 F.3d at 543. Where the intent is not clear and Congress has not directly addressed the precise question, courts will consider whether the agency construction of the statute is a permissible one. *Id*. As applied here, if the language of § 212(h) is plain and the intent is clear, we will apply that intent; if, however, the language of § 212(h) ambiguous, we will consider the Board's interpretation and defer to it if that construction is a permissible one.

The first issue in this case is whether Papazoglou is "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence" as used in § 212(h). That rather tortured language has been interpreted by a number of circuits, all of which have agreed as to its meaning. See *Hanif v. Atty. General of the United States*, 694 F.3d 479, 483 (3d Cir. 2012); *Bracamontes v. Holder*, 675 F.3d 380, 386–87 (4th Cir. 2012); *Lanier v. U.S. Atty Gen.*, 631 F.3d 1363, 1366–67 (11th Cir. 2011); *Martinez v. Mukasey*, 519 F.3d 532, 546 (5th Cir. 2008); see also *Hing Sum v. Holder*, 602 F.3d 1092, 1097 (9th Cir. 2010). Those circuits look to the definitions of "admitted" and "admission," and the term "lawfully admitted for permanent residence," in the INA. "Admitted" and "admission" are defined as "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C § 1101(a)(13)(A); *Leiba*, 699 F.3d at 349 . That provision therefore encompasses the action of an entry into the United States, accompanied by an inspection or authorization. The subsequent term, "lawfully admitted for permanent residence," is the status of having been lawfully

accorded the privilege of residing permanently in the United States. *Hanif*, 694 F.3d at 485; *Leiba*, 699 F.3d at 350. Under 8 U.S.C. § 1255(b), the Attorney General "shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for adjustment of status is made." *Hanif*, 694 F.3d at 485. Applying those definitions, the circuit courts of appeal have held that § 212(h) precludes a waiver only for those persons who, at the time they lawfully entered into the United States, had attained the status of lawful permanent residents. *Hanif*, 694 F.3d at 487; *Bracamontes*, 675 F.3d at 386–87; *Lanier*, 631 F.3d at 1366–67; *Martinez*, 519 F.3d at 546.

The Board has refused to follow those circuits, and applies a different interpretation in all circuits but the ones which have specifically addressed the issue and held otherwise. Urging us to follow the lead of the Board rather than the other circuits, the government argues that the definition of "admitted" is not dispositive here, because the INA also provides that when a person's status is adjusted, that person is "lawfully admitted for permanent residence" as of that date of adjustment and that date constitutes the date of admission. Relying on that statutory provision, the government argues that a person is "admitted to the United States as an alien lawfully admitted for permanent residence" as of the date at which the person attains permanent resident status, because that constitutes a date of admission. That argument, however, would render irrelevant the first part of that § 212(h) provision. The provision does not preclude waiver for any person who was lawfully admitted for permanent residence; instead, it precludes waiver only for those persons who had *"previously been admitted* to the

United States *as a person lawfully admitted for permanent residence.*" [emphasis added] The government's interpretation would conflate the two requirements, and preclude waiver whenever a person was lawfully admitted for permanent residence. We will not interpret a statute in a manner that renders part of it irrelevant, particularly where, as here, the statute has an unambiguous meaning if we simply apply the definition provided in the statute itself. We agree with the other circuits that have held that by its plain language, § 212(h) waiver is precluded only when the person was a lawful permanent resident at the time of his or her lawful entry into the United States. Because Papazoglou entered the United States on a visitor's visa and was not a lawful permanent resident at that time, he does not fall within that language and therefore is not precluded from consideration for the waiver.

That does not end our inquiry, however, because the Board held that even if Papazoglou were eligible for the waiver, it would decline to grant him a waiver as a matter of discretion. That holding is a discretionary determination over which we lack jurisdiction. *Vaca-Tellez*, 540 F.3d at 668. Papazoglou does not in fact dispute that we lack jurisdiction to consider discretionary determinations, and forswears any such challenge. Instead, he attempts to avoid the clear application of that jurisdictional principle here by contending that the Board based its decision not on a valid exercise of its discretion, but on an error of law as to what factors had to be considered and without the proper deference to the factual findings of the IJ. A review of Papazoglou's claims, however, reveals that the Board applied the appropriate legal standards, and that his

challenge ultimately constitutes a disagreement with the Board's exercise of discretion in refusing to grant the waiver.

Papazoglou asserts that although the Board claimed to have left the IJ's factual findings undisturbed, the decision of the Board reveals that the Board exceeded the scope of its authority by essentially failing to properly consider all of the relevant facts as found by the IJ. According to Papazoglou, the Board erred in that it did not respect the role of the IJ in the factfinding process, and reached new conclusions in the absence of clear error by the IJ. Papazoglou asserts that the role of the Board is a limited one, and that it may not reweigh the evidence and substitute its own evidence absent clear error.

In support of this contention, Papazoglou maintains that the Board explicitly acknowledged only two harms to Papazoglou's qualifying relatives that would be caused by his removal: that his wife and children would suffer emotional hardship and that they would experience financial harm. According to Papazoglou, in characterizing the impact as "emotional hardship" without elaborating, the Board effectively overruled *sub silentio* the IJ's finding that Papazoglou's family would suffer severe psychiatric consequences. Papazoglou points to evidence presented that Papazoglou's family members could experience depression and suicidal ideation as a result of his removal. In addition, Papazoglou argues that the Board merely noted the serious health conditions faced by Papazoglou's wife, but did not analyze how those conditions would be affected by Papazoglou's departure. Finally, Papazoglou asserts that the Board failed to discuss the IJ's conclusions that Papazoglou presented a low risk of reoffending and that he had taken positive steps toward

rehabilitation, instead stating merely that Papazoglou had developed a plan for engaging in rehabilitative services.

Those contentions unfairly characterize the Board's decision, and do not in fact present a legal challenge. The Board explicitly referenced the findings of facts made by the IJ, stating that those factual findings were not challenged by either party on appeal and that it found no clear error as to those findings. The Board then proceeded to discuss the areas of hardship asserted by Papazoglou. Given its statement that the IJ's determination of facts was unchallenged on appeal, the Board was not required to restate those facts in explicit detail where a shorthand reference would make clear that those facts were considered. The Board made it clear that it had reviewed and considered the facts relating to the impact on the family in terms of emotional and physical health, and the rehabilitative efforts by Papazoglou. The Board need not use the precise language of the IJ in order for us to determine that the Board properly reviewed the IJ's fact findings, particularly where the Board has explicitly noted that there was no dispute as to those fact findings and no clear error. There is, in short, nothing here to indicate that the Board applied an improper legal standard.

Nor did the Board err in applying the law to those facts. Papazoglou repeatedly asserts that the Board selectively focused on the "bad" facts while ignoring or diminishing the "positive" facts. In fact, Papazoglou goes so far as to characterize the Board's decision as employing a *per se* rule that no amount of positive equities could have allowed for a grant of relief for Papazoglou's particular conviction, which he contends is a violation of the due process clause. That once again is an effort to recharacterize a discretionary determination as

a legal or constitutional challenge, in order to shoehorn the appeal into our limited jurisdictional window. The Board held that notwithstanding the positive equities, the serious and recent criminal conviction involving sexual assault of a minor outweighed the favorable factors presented. That is a proper weighing of the factors. The Board never indicates that no amount of positive factors could outweigh such a conviction, just that in this case the balance is not favorable to Papazoglou. The Board may consider such a conviction, involving the sexual abuse of a ten year old child, to be so serious a matter that it can not easily be outweighed in determining whether a discretionary waiver is appropriate. That is not problematic. In fact, the Board declared that it did not need to determine whether the hardship rose to the level of exceptional and extremely unusual hardship under 8 CFR § 1212.7(d), choosing instead to operate from the premise that the relevant hardship standard was met and determining whether to exercise its discretion given those facts. Papazoglou's real dispute is with the Board's conclusion as to whether the waiver should be granted as a matter of discretion given those fact findings, but we lack jurisdiction to review that discretionary determination. Because his legal challenges are unsupported by the record, his claims are without merit and the decision of the Board is AFFIRMED.