**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3386
_____

JOSE LEOPOLDO PEREZ-GONZALEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-310-066)
Immigration Judge:  Adam Panopoulos
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 6, 2025
Before:  KRAUSE, PHIPPS, and ROTH, Circuit Judges

(Opinion filed July 7, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jose Leopoldo Perez-Gonzalez, a citizen of Guatemala, petitions for review of a final order of removal issued by the Board of Immigration Appeals. We will deny the petition.

Perez-Gonzalez entered the United States without inspection in 2008. The Government charged him with removability for being present in this country without having been admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Perez-Gonzalez applied for asylum, withholding of removal, protection under the United Nations Convention Against Torture (CAT), and cancellation of removal.[1] He alleged that in the mid-1980s, when he was about five years-old, Guatemalan soldiers questioned his family about the disappearance of his brother, who possibly was kidnapped by guerrillas as part of an ongoing civil war. He also alleged that, when he was a boy, unidentified individuals stopped him and placed a handkerchief over his mouth. In the late 1980s, he was sexually abused by a neighbor. In 2007, Perez-Gonzalez was shot in the leg and foot by criminals after he refused to help them steal cattle. The police investigated, but the perpetrators were never caught. In the United States, Perez-Gonzalez was involved in a fight with a man who threatened Perez-Gonzalez because he blamed him for his then-pending removal.

An Immigration Judge held that Perez-Gonzalez was credible but denied the applications. In particular, the IJ concluded that the soldiers' questioning did not rise to

---

[1] Although Perez-Gonzalez was represented by counsel during initial removal proceedings, his counsel eventually withdrew, and he proceeded pro se at the merits hearing.

2

the level of persecution; determined that the handkerchief incident, the sexual assaults, and the threats from the man who blamed Perez-Gonzalez for his removal did not constitute persecution on account of a protected ground; and found that Perez-Gonzalez failed to demonstrate that the Guatemalan government was connected to the shooting, either through act or omission.  Because Perez-Gonzalez failed to satisfy the burden of proof required for asylum, the IJ held that he also necessarily failed to satisfy the clear probability standard for withholding of removal.  With respect to the request for CAT relief, the IJ concluded that there was a "very low likelihood that anyone would target [Perez-Gonzalez] for any type of harm upon his return" to Guatemala.  The IJ also denied Perez-Gonzalez's application for cancellation of removal, holding that he failed to demonstrate exceptional and extremely unusual hardship to his lawful permanent resident wife, noting that Perez-Gonzalez and his wife had been separated for three years, and that Perez-Gonzalez had not had any communication with her for the past 11 months.

The Board of Immigration Appeals dismissed Perez-Gonzalez's appeal "for the reasons set forth in the [IJ's] decision," noting that he "has not raised any argument on appeal that would cause us to disturb the [IJ's] decision denying asylum, withholding of removal under the [Immigration and Nationality Act], protection under the CAT, or cancellation of removal."  Perez-Gonzalez, proceeding pro se, filed a timely petition for review.

We have jurisdiction under 8 U.S.C. § 1252.  When the BIA adopts the IJ's decision, as it essentially did here, we review both decisions.  Hanif v. Att'y Gen., 694 F.3d 479, 483 (3d Cir. 2012).  We review factual findings for substantial evidence

3

and review de novo the agency's legal determinations, including its application of law to undisputed facts. See Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 106 (3d Cir. 2020); Manuel-Soto v. Att'y Gen., 121 F.4th 468, 472 (3d Cir. 2024). "[T]he substantial-evidence standard governs review of a hardship determination in a cancellation-of-removal proceeding." Wilkinson v. Att'y Gen., 131 F.4th 134, 142 (3d Cir. 2025).

To establish eligibility for asylum, a petitioner must demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Wang v. Gonzales, 405 F.3d 134, 138 (3d Cir. 2005). "[P]ersecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003). But harm on account of a protected ground "alone does not suffice for persecution: the government must also be complicit to some degree in the harm through either act or omission." Galeas Figueroa v. Att'y Gen., 998 F.3d 77, 86 (3d Cir. 2021).

Substantial evidence supports the conclusion that Perez-Gonzalez failed to establish eligibility for asylum. The 1985 incident in which soldiers questioned Perez-Gonzalez's family about his older brother's disappearance does not rise to the level of persecution. The soldiers, who possibly suspected that guerrillas kidnapped Perez-Gonzalez's brother, did not threaten or harm him or his family. See Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006) (stating that "we have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien").

4

Furthermore, the IJ correctly concluded no protected ground was implicated when unidentified individuals placed a handkerchief over Perez-Gonzalez's mouth, when he was sexually abused by a neighbor, when he was shot by criminals, or when he was threatened by a man who was later removed to Guatemala.  We have held that "[c]onflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."[2]  Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685 (3d Cir. 2015).  Perez-Gonzalez has not meaningfully contested the IJ's conclusion that the handkerchief incident "appear[ed] to be an interpersonal conflict with a neighbor from another family."  The sexual abuse, while despicable, was committed by Perez-Gonzalez's adult neighbor, and there is no indication in the record linking the abuse to a protected ground.  In addition, no evidence compels a conclusion contrary to the determination that there was no nexus between a protected ground and the threats from the man with whom Perez-Gonzalez fought and who later was removed.  See Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003); see also Amanfi v. Ashcroft, 328 F.3d 719, 727 (3d Cir. 2003) (noting that "retaliation in response to a personal dispute" is not "a ground for asylum").  Because Perez-Gonzalez failed to establish asylum eligibility, he also necessarily failed to satisfy the clear probability standard required for withholding of removal.  See Zubeda, 333 F.3d at 469-70.

---

[2] Even if the shooting incident had been based on a protected ground, the IJ properly held that the Guatemalan government was not unwilling or unable to control the perpetrators. Perez-Gonzalez reported the shooting to the police, who investigated the crime.

The IJ also properly concluded that Perez-Gonzalez failed to establish eligibility for protection under the CAT. To warrant CAT protection, Perez-Gonzalez bore the burden to establish, through objective evidence, "that it is more likely than not" that he will be tortured if removed. 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punish[ment] . . . for an act, . . . intimidat[ion] or coerci[on], or for any reason based on discrimination of any kind." 8 C.F.R. § 1208.18(a)(1). The BIA upheld the IJ's finding that Perez-Gonzalez had not proved, with record evidence, that it was more likely than not that he will be tortured if returned to Guatemala. Substantial evidence supports that conclusion. Perez-Gonzalez was not tortured in the past. And he has not been threatened with future harm by the soldiers who questioned his family, by the individuals who placed a handkerchief over his mouth and who sexually assaulted him, or by the criminals who shot him in 2007. Although the man who blamed Perez-Gonzalez for his removal stated that he would target Perez-Gonzalez if he were to return to Guatemala, that threat is not sufficient to demonstrate a likelihood of torture. The IJ noted that Perez-Gonzalez, who is fluent in Spanish and "able-bodied," will likely return to Flores, Peten, where his family lives. The man who made the threat is from Jutiapa, in another part of Guatemala. Cf. 8 C.F.R. § 1208.16(c)(3)(ii) (providing that evidence that an applicant could relocate is a factor to consider in determining the likelihood of torture); Singh v. Garland, 11 F.4th 106, 118 (2d Cir. 2021) (holding ability to relocate was dispositive of CAT claim). In addition, the IJ found that "it is likely that the authorities in Peten would act in a way to

6

protect [Perez-Gonzalez]." Nothing in the record suggests that any reasonable adjudicator would be compelled to conclude to the contrary. See Nasrallah v. Barr, 590 U.S. 573, 584 (2020).

Substantial evidence also supports the denial of cancellation of removal. Perez-Gonzalez alleged that his removal would result in exceptional and extremely unusual hardship to his lawful permanent resident wife. But he testified that he had been separated from his wife for three years, and he had not had any communication with her for 11 months. He also conceded that his removal would have little effect on his wife, other than perhaps to cause her to be concerned for his wellbeing. Under these circumstances, the IJ properly determined that Perez-Gonzalez was ineligible for cancellation of removal. See Wilkinson, 131 F.4th at 143-44 (stating that "feeling sad" cannot be characterized as "extremely unusual" hardship).

Finally, Perez-Gonzalez argues that the IJ prevented his lawyer from participating at the merits hearing and by failing to provide a "free lawyer." Pet'r's Br., at 5. As the Government accurately observes, Perez-Gonzalez did not exhaust this claim by presenting it on appeal to the Board. Resp't's Br. at 23. Under these circumstances, we cannot reach the issue.[3] See 8 U.S.C. § 1252(d)(1) (providing that a court may review

---

[3] Failure to exhaust can be excused, see, e.g., Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006) (explaining that due process claims are generally exempt from the exhaustion requirement because the BIA does not have jurisdiction to adjudicate constitutional issues), but Perez-Gonzalez has not explained why he could not have raised this claim in the appeal to the Board. In any event, Perez-Gonzalez's claim lacks merit. According to the record, Perez-Gonzalez's attorney withdrew from the case before the merits hearing. Nevertheless, his attorney appeared at that hearing, apparently because someone in Perez-Gonzalez's family had requested his presence. After the IJ confirmed that Perez-

7

final order of removal only if "the alien has exhausted all administrative remedies available to the [non-citizen] as of right"); <u>Santos-Zacaria v. Garland</u>, 598 U.S. 411, 419 (2023) (holding that § 1252(d)(1) is a non-jurisdictional but mandatory claims-processing rule).

For the foregoing reasons, we will deny the petition for review.

---

Gonzalez's attorney had previously been allowed to withdraw, he was excused from the proceeding. Thus, Perez-Gonzalez's contention that the IJ did not provide his former attorney "the opportunity to represent" him is inaccurate. In addition, although Perez-Gonzalez was not entitled to counsel at the Government's expense, the IJ informed him that he could hire an attorney and told him that he may be eligible for free or low-cost legal services. <u>See</u> <u>Leslie v. Att'y Gen.</u>, 611 F.3d 171, 181-82 (3d Cir. 2010).