RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT MICHAEL STANOVSEK,

                        *Petitioner,*

   *v.*

ERIC H. HOLDER, JR., Attorney General,

                        *Respondent.*

No. 13-3279

On Petition for Review of an Order of the Board of Immigration Appeals.
No. A029 876 895—Cleveland.

Argued: March 26, 2013

Decided and Filed: September 24, 2014

Before: BOGGS and ROGERS, Circuit Judges; STEEH, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Thomas E. Moseley, LAW OFFICES OF THOMAS E. MOSELEY, Newark, New Jersey, for Petitioner. Kelly J. Walls, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Thomas E. Moseley, LAW OFFICES OF THOMAS E. MOSELEY, Newark, New Jersey, for Petitioner. Janice K. Redfern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Mary Kenney, Beth Werlin, AMERICAN IMMIGRATION COUNCIL, Washington, D.C., for Amicus Curiae.

     ROGERS, J., delivered the opinion of the court, in which STEEH, D.J., joined. BOGGS, J. (pp. 9–13), delivered a separate dissenting opinion.

---

    [*]The Honorable George C. Steeh, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**OPINION**

_____

ROGERS, Circuit Judge.  This case raises the issue of whether an alien who has adjusted his status to that of a lawful permanent resident after being admitted to the United States on a nonimmigrant visa, and who is later subject to removal for committing an aggravated felony, may seek a hardship waiver.  A provision of the Immigration and Nationality Act ("the Act") bars such a hardship waiver for an alien admitted to the United States in the first place as an immigrant, but the bar cannot be read to extend to aliens who were lawfully admitted first as nonimmigrants and who later adjusted to immigrant status.  The basis for such a distinction is very hard to see, and the Attorney General accordingly argues that the bar applies in both instances.  The inescapably clear language of the statute, however, requires the conclusion that the bar does not extend to the latter situation.  The decision of the Board of Immigration Appeals relying on the bar therefore cannot stand in this case.

Petitioner Stanovsek, a citizen of Australia, was admitted on a nonimmigrant visitor visa in 1990 and later adjusted status to lawful permanent resident by virtue of his marriage to a United States citizen.  In September 2009, Stanovsek was convicted for the offense of aggravated theft, in violation of Ohio Rev. Code § 2913.02(A)(1), and was sentenced to three years of imprisonment.  Stanovsek's crime constituted an aggravated felony under § 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G), which defines an aggravated felony to include theft offenses for which the term of imprisonment is at least one year.  Consequently, the Department of Homeland Security charged Stanovsek with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), as a non-citizen convicted of an aggravated felony after his admission to the United States.

At the removal hearing, Stanovsek conceded the charge of removability, but requested an adjustment of status and a waiver from removal under § 212(h), which applies when removal would impose "extreme hardship" on the alien's United States citizen spouse, parent, or child.  8 U.S.C. § 1182(h).  The Immigration Judge determined that Stanovsek was ineligible for a § 212(h) waiver under the BIA precedent of *Matter of Rodriguez*, because he was convicted of

an aggravated felony after adjusting status, and the BIA affirmed the Immigration Judge's decision on that ground. The BIA relied on the Act's provision that:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony.

8 U.S.C. § 1182(h). The BIA in *Rodriguez* had interpreted this language to mean that "212(h) relief is unavailable to any alien who has been convicted of an aggravated felony after acquiring lawful permanent resident status," except in jurisdictions where controlling circuit law forbade it from doing so. *Rodriguez*, 25 I. & N. Dec. 784, 789 (BIA 2012).

The statutory language however is clear and unambiguous that a § 212(h) waiver is precluded after a conviction of an aggravated felony only when the removable person had attained the status of lawful permanent resident at the time of his or her lawful entry into the United States. *See* 8 U.S.C. § 1182(h). The Immigration and Nationality Act defines "admitted" and "admission" to mean "with respect to an alien, the lawful *entry* of the alien *into the United States* after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). "[The § 212(h) language] therefore encompasses the action of an entry into the United States, accompanied by an inspection or authorization." *Papazoglou v. Holder*, 725 F.3d 790, 793 (7th Cir. 2013). In addition, "lawfully admitted for permanent residence," is statutorily defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant." 8 U.S.C. § 1101(a)(20); *see also Papazoglou*, 725 F.3d at 793. "This term encompasses all [lawful permanent residents], regardless of whether they obtained that status prior to or at the time they physically entered the United States or by adjusting their status while already living in the United States." *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1053 (9th Cir. 2014). Thus the statutory language with the statutory definitions substituted is as follows:

> No waiver shall be granted under this subsection in the case of an alien who has previously [entered into the United States after inspection and authorization by an immigration officer] as an alien [with the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant] if . . . since the date of such admission the alien has been convicted of an aggravated felony.

This language cannot be stretched to bar an alien who did not enter as an alien with immigrant status, but who lawfully entered as a non-immigrant and later adjusted status. Not only does the language clearly not say that, but also such a result could quite easily have been obtained by saying something much simpler, such as:

> No waiver shall be granted under this subsection in the case of a lawful permanent resident if . . . since the date of obtaining such status the alien has been convicted of an aggravated felony.

This conclusion comports with holdings in the Third, Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits that "the text [of 8 U.S.C. § 1182(h)] is unambiguous and . . . the bar to seeking a § 212(h) waiver of inadmissibility does not apply to persons who adjusted to lawful permanent resident status after having entered into the United States by inspection." *Negrete-Ramirez*, 741 F.3d at 1050; *see also Papazoglou*, 725 F.3d at 792–94; *Leiba v. Holder*, 699 F.3d 346, 348–56 (4th Cir. 2012); *Hanif v. Attorney Gen.*, 694 F.3d 479, 483–87 (3d Cir. 2012); *Bracamontes v. Holder*, 675 F.3d 380, 382, 384–89 (4th Cir. 2012); *Lanier v. U.S. Attorney Gen.*, 631 F.3d 1363, 1365–67 (11th Cir. 2011); *Martinez v. Mukasey*, 519 F.3d 532, 541–46 (5th Cir. 2008).

Although not on all fours, our decision in *Zhang v. Mukasey*, 509 F.3d 313 (6th Cir. 2007), also supports this conclusion. In that case we addressed the meaning of "admission" in the context of removal under § 237(a)(2)(A)(i) of the Act, 8 U.S.C. § 1227(a)(2)(A)(i), for committing a crime of moral turpitude within five years of an alien's "date of admission." We held that an adjustment of status to lawful permanent resident did not constitute an "admission" for purposes of 8 U.S.C. § 1227(a)(2)(A)(i). 509 F.3d at 314, 316. We relied on the "unambiguous" definition of the term "admitted" set forth in 8 U.S.C. § 1101(a)(13)(A) to conclude that "there is only one 'first lawful admission,' and it is based on physical, legal entry into the United States." *Id.* at 316. Therefore, date of "admission" is the date of the alien's lawful entry. *Id.*

Moreover, this court in *Zhang* distinguished *Matter of Rosas-Ramirez*, 22 I. & N. Dec. 616 (BIA 1999), a case on which the Attorney General here relies, by explaining that, for an alien who had entered the United States illegally, as was the case in *Rosas*, an adjustment of status is an "admission" because an adjustment of status is the first point at which such an

individual is *lawfully* in the United States.  *Zhang*, 509 F.3d at 316.  Thus a post-entry adjustment of status differs in its significance between individuals who had previously entered the U.S. legally, and those who had first entered the United States illegally and are only lawfully in the United Status after completing an adjustment of status.  This distinction undermines the Attorney General's "adjustment-as-admission" argument, which relies heavily on BIA precedent involving aliens who were adjusted to lawful permanent resident status without a prior lawful admission to the U.S.  *See, e.g.*, *Matter of Koljenovic*, 25 I. & N. Dec. 219 (BIA 2010); *Rosas-Ramirez*, 22 I. & N. Dec. 616 (BIA 1999); *Matter of Rodarte-Roman*, 23 I. & N. Dec. 905 (BIA 2006); *Rodriguez*, 25 I. & N. Dec. 784 (BIA 2012).

While the principles of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984), would apply to the BIA's interpretation of the statutory provision in question, that only makes a difference if the provision is ambiguous.  That is not the case here, for the reasons already given.  If "Congress has directly spoken to the precise question at issue" such that "the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

Ruling to the contrary, the Eighth Circuit has recently applied *Chevron* deference to uphold the BIA's construction of the statutory provision in question, by finding an ambiguity from the use of the words "admitted" and "admission" in other provisions of the Act.  *Roberts v. Holder*, 745 F.3d 928, 932 (8th Cir. 2014).  However, the reasoning in *Roberts* is not compelling. The court in *Roberts* reasoned that, "[r]eading the immigration statutes as a whole, . . . [8 U.S.C.] § 1182(h) is ambiguous as to the meaning of 'previously been admitted as an alien lawfully admitted for permanent residence,'" because the "immigration statutes use the words 'admitted' and 'admission' inconsistently."  *Id*.  The *Roberts* court pointed in particular to 8 U.S.C. § 1255(b), which provides that once an alien has adjusted to lawful permanent resident status under 8 U.S.C. § 1255(a), "the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made," and the Secretary of State shall reduce the number of available immigrant visas accordingly.  *Id*. at 933 (quoting 8 U.S.C. § 1255(b)).  The court in *Roberts* reasoned that 8 U.S.C. § 1255(b) treats adjustment itself as an "admission" by directing

the Attorney General to record "admission" as of the date the alien adjusts his status, and this provision demonstrates that the immigration statutes may be fairly read as treating post-entry adjustment as a substitute for port-of-entry inspection. *Id*. With respect, this does not follow.[1] 8 U.S.C. § 1255(b) says that for some purposes the status of being "lawfully admitted for permanent residence" begins at the time of adjustment of status. This provision is perfectly consistent with the definition of "lawful admission" as an event occurring at the point of first lawful entry, while the *status* of "lawfully admitted for permanent residence" can be attained at that point of entry or at a later adjustment of status.

Thus, 8 U.S.C. § 1255(b) refers to the date an alien attains lawful permanent resident status, which aligns with other uses of that term elsewhere in the statute. As this court noted in *Zhang*, the position that "there can be more than one date on which an alien is lawfully admitted to the country is contrary to the plain language of the statute." *Zhang*, 509 F.3d at 316–17 (interpreting 8 U.S.C. § 1227(a)(2)(A)(i)). Moreover, to conclude that 8 U.S.C. § 1182(h) is ambiguous as to the meaning of "previously been admitted as an alien lawfully admitted for permanent residence" discounts the fact that the phrase is comprised of two distinct terms, both explicitly defined in the statute— "admitted" and "lawfully admitted for permanent residence." Each defined term adds its own meaning to that phrase: the first refers to a type of entry into this country, while the second refers to a certain status held by aliens. Together, the phrase clearly describes individuals who have [lawfully entered into the U.S. after inspection and authorization] as an alien [with lawful immigrant status]. "We will not interpret a statute in a manner that renders part of it irrelevant, particularly where, as here, the statute has an unambiguous meaning if we simply apply the definition provided in the statute itself." *Papazoglou*, 725 F.3d at 794.

---

[1]The Third Circuit also rejected the argument that Congress clearly stated in 8 U.S.C. § 1255(b) that the date of the adjustment of status is the date of admission. *Hanif*, 694 F.3d at 485. The court held:

> The date of gaining a new status is not the same as the date of the physical event of entering the country. We perceive the recording requirement of § 1255(b) to be a ministerial provision relating to the monitoring and control of the number of visas available in any given year, rather than an effort by Congress to amend the definitions of "admitted" and "lawfully admitted for permanent residence" set forth in § 1101(a).

694 F.3d at 485. *See also Fayad v. Keller*, 10-CV-03372-LHK, 2011 WL 884042 at *5 (N.D. Cal. Mar. 14, 2011) ("As explicitly enumerated under 8 U.S.C. § 1255(b), the Court finds that Plaintiff's LPR status began anew on the date that the second visa was issued."); *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1083 (N.D. Cal. 2005) (noting that "the benefits of LPR status vest in full on the date of the EOIR's order granting status") (citing 8 U.S.C. § 1255(b)).

The *Roberts* opinion also does not address the fact explained above that much simpler language would easily have achieved the BIA's preferred interpretation.

The dissent points to three provisions of the INA that involve the language an "alien . . . admitted . . . as an alien lawfully admitted for permanent residence": 8 U.S.C. §§ 1151(c), 1186a, and 1186b. The Government's brief, despite extensive argument regarding the historical backdrop, the context of neighboring words, and the language of the statute as a whole, never cites or relies upon §§ 1151(c), 1186a, or 1186b. These provisions do not support the Government's position.

Section 1151(c), which deals with the calculation of the number of family-sponsored immigrants that can be admitted in a particular year, appears to contemplate that an alien who has been *paroled* into the United States under § 1182(d)(5) could subsequently be "admitted as an alien lawfully admitted for permanent residence." 8 U.S.C. § 1151(c)(4), (5). However, § 1182(d)(5) makes explicit that parole under § 1182 "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5). At most, § 1151(c) could be read to contemplate that someone paroled but not admitted could be later admitted as an alien lawfully admitted for permanent residence. This says nothing about an alien who has been previously admitted.

Sections 1186a and 1186b deal with aliens who have obtained the status of lawful permanent residence, based on marriage or entrepreneur status, where the status is conditioned on a determination within two years that the marriage is valid or the entrepreneur has met certain investment obligations. Sections 1186a(e) and 1186b(e) deal solely with the subsequent naturalization of such persons, as evidenced by the caption ("Treatment of period for purposes of naturalization") and the limiting initial language of the subsections ("For purposes of subchapter III,"). Subchapter III covers "Nationality and Nationalization." Sections 1186a(e) and 1186b(e) provide that while having LPR status on a conditional basis, the alien "For purposes of Subchapter III . . . shall be considered to have been admitted as an alien lawfully admitted for permanent residence and to be in the United States as an alien lawfully admitted to the United States for permanent residence." §§ 1186a; 1186b. At most these provisions suggest that an alien may be "considered" as having been admitted (not necessarily that the alien has been) for the limited purposes of the naturalization provisions of the INA, which impose, for instance, time

requirements as an LPR before naturalization is allowed. *See* 8 U.S.C. § 1427(a). Stanovsek's case does not involve naturalization at all. These provisions say nothing about the meaning of "admitted" or "as an alien lawfully admitted for permanent residence" for provisions outside of Subchapter III of the INA, including the provisions at issue in this case.

We recognize that the BIA's interpretation of the Act would avoid a reading that appears to make little sense. Why would Congress distinguish between those who obtained lawful permanent resident status at the time of lawful entry and those who adjusted status later, for purposes of barring permanent residents who have committed aggravated felonies from discretionary hardship relief? Our inability to answer such a question does not, however, warrant expanding the scope of a statutory provision beyond a meaning as plainly limited as the one in question here. Absent a constitutional argument (none is made here), we must apply the clear meaning of the Act.

We grant the petition for review and remand this matter to the Board for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

BOGGS, Circuit Judge, dissenting.　Today's majority adopts an interpretation of the immigration statute that it admits "make[s] little sense."　Majority Op. at 8.　At issue is the phrase "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence."　The majority construes this phrase to mean that the alien must have been lawfully admitted for permanent residence at the time he or she first *physically entered* the United States.　Thus, in the majority's view, one can acquire the *status* of "an alien lawfully admitted for permanent residence," but whether one is "admitted to the United States" as such is a question of *historical fact*.　The majority concedes that it can discern no material difference between an alien who enters this country as a lawful permanent resident ("LPR") and one who adjusts his status following entry.　*Ibid*.　Nevertheless, under the majority's interpretation of the statute, the latter is eligible for a § 212(h) waiver but the former is not.

The BIA offers an alternative interpretation of the text.　Under that interpretation, one can be *treated* as having been "admitted as" an LPR without having actually been admitted (i.e., physically entered the country) as such.　In other words, according to the BIA, when an alien adjusts his status, it is *as if* the alien were "admitted . . . as . . . an alien lawfully admitted for permanent residence."

For the government to prevail, it need not show that its interpretation of the statute is correct; rather, it need only show that the text is ambiguous on this point, and that the BIA's interpretation was reasonable.　*See Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2203 (2014) ("[I]f the law does not speak clearly to the question at issue, a court must defer to the Board's reasonable interpretation, rather than substitute its own reading.").　The text of a statute is ambiguous if "it is subject to more than one reasonable interpretation." *N. Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm'n*, 691 F.3d 735, 740 (6th Cir. 2012).　For the reasons explained below, the BIA's alternative interpretation of the text is at least as plausible as that of the majority.　What's more, the BIA's interpretation avoids the nonsensical result of treating LPRs differently under § 212(h) based on how they acquired their LPR status, which the

majority concedes ought to be immaterial.  Because the BIA offers a reasonable interpretation of an ambiguous provision of the immigration laws, the court must defer to the BIA.  I therefore respectfully dissent.

"When an interpretation of a statutory text leads to a result that makes no sense, a court should at a minimum go back and verify that the textual analysis is correct."  *Carr v. United States*, 560 U.S. 438, 470 (2010) (Scalia, J., concurring).  The majority's textual analysis is flawed, or at least incomplete, because it ignores other uses of the phrase "admitted . . . as an alien lawfully admitted for permanent residence" elsewhere in the Immigration and Nationality Act.  That phrase is also employed at 8 U.S.C. §§ 1151, 1186a, and 1186b.  An analysis of the use of the phrase in those sections makes clear that an alien need not *physically enter* the country as an LPR to qualify as "an alien . . . *admitted* . . . *as* an alien lawfully admitted for permanent residence."  *See* 8 U.S.C. § 1182(h) (emphasis added).  As a result, the interpretation of § 212(h) proffered by the BIA actually has strong support in the statutory text.

The phrase is first used in § 1151(c), which deals with the "computation" of the number of family-sponsored immigrant visas that are to be made available in a given year.  Part of that computation involves a reduction for the number of aliens who, among other things, were paroled into the country "in the second preceding fiscal year" and "did not depart . . . within 365 days."  § 1151(c)(4).  Under the following paragraph, however, certain exceptions aside, if any such alien "is *subsequently admitted as an alien lawfully admitted for permanent residence*, such alien shall not again be considered for purposes of paragraph (1)," which delineates the computation methodology.  § 1151(c)(5) (emphasis added).  Section 1151(b)(5) thus contemplates that an alien *already in the United States*, who *entered lawfully*, may be "subsequently admitted as an alien lawfully admitted for permanent residence."  In other words, since the "admitted as" language refers to aliens who are already here, that language cannot mean "physical entry."  And since it also refers to aliens who first entered lawfully, it cannot mean "first lawful entry."  *Cf.* Majority Op. at 4–5 (arguing that "adjustment of status is an 'admission'" only for "those who had first entered the U.S. illegally and are only lawfully in the United States after completing an adjustment of status.").  Inserting the definition relied on by the majority, § 1151(c)(5) would effectively read, in pertinent part: an alien already in the United

States may "subsequently [enter into the United States after inspection and authorization by an immigration officer]."   *See* Majority Op. at 3 (inserting that same definition in the statute disputed herein, § 1182(h)).   That construction does not make sense because it anticipates the future entry of an alien who is already in the country.   Here, the government's "adjustment-as-admission" argument, as the majority refers to it, *see id*. at 5, is actually more compelling.

Further supporting the BIA's view is the fact that an alien's adjustment of status is actually called an "admission" under the statute.   Section 1255(b) provides: "Upon the approval of an application for adjustment made under subsection (a) of this section, the Attorney General shall record the alien's *lawful admission* for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made." (emphasis added).   Thus, an alien who later adjusts his status to that of "an alien lawfully admitted for permanent residence" also acquires a date of "admission," as opposed to a date of "adjustment." *See id.*; § 1182(h) (providing that no waiver shall be granted if the alien has been convicted of an aggravated felony "since the date of such admission.").   Following the language of the statute, it would therefore be quite logical to say that such an alien was "admitted as" an LPR on the date that his application was approved.   In other words, from a legal perspective, by adjusting his status, the alien effectively *became* an alien "admitted . . . as an alien lawfully admitted for permanent residence," whether or not he *physically entered* the country in that capacity.

The phrase "admitted as an alien lawfully admitted for permanent residence" is also used in §§ 1186a and 1186b of the Act, which make "conditional" the LPR status of "alien spouses and sons and daughters," among others.   According to his brief, Stanovsek "was admitted to the United States as a non-immigration visitor and later adjusted status to permanent residence under Section 245 of the Act, 8 U.S.C. § 1255 [*sic*] in August 1990 based upon his marriage to Susan Stanovsek, a United States citizen."   Appellant's Br. at 4.   He therefore appears to qualify as an "alien spouse" whose LPR status is "conditional . . . subject to the provisions of [§ 1186a]."[1]

Section 1186a(e) provides:

---

[1]"The term 'alien spouse' means an alien who obtains the status of an alien lawfully admitted for permanent residence (whether on a conditional basis or otherwise)—(A) as an immediate relative (described in section 1151(b) of this title) as the spouse of a citizen of the United States." § 1186a(h)(1). There is no indication that he and his spouse sought to have his conditional status removed pursuant to § 1186a(c).

> For purposes of subchapter III of this chapter, in the case of an alien who is in the United States as a lawful permanent resident on a conditional basis under this section, *the alien shall be considered to have been admitted as an alien lawfully admitted for permanent residence* and to be in the United States as an alien lawfully admitted to the United States for permanent residence.

In other words, an alien spouse like Stanovsek not only *is* an LPR, but is "considered *to have been admitted* as" one.**2** The language of § 1186b is identical. The point is that Congress accorded conditional LPRs the status of having been "*admitted as* aliens lawfully admitted for permanent residence"—regardless of whether the LPRs *physically entered* the country as LPRs or subsequently adjusted their status.

The language in §§ 1186a(e) and 1186b(e) mirrors the § 212(h) waiver language, which prohibits granting a waiver to an alien subsequently convicted of an aggravated felony where that alien "has previously been admitted to the United States as an alien lawfully admitted for permanent residence." *See* § 1182(h). In other words, § 1182(h) bars waivers for certain aliens "who ha[ve] previously been admitted" as LPRs, and § 1186a(e) provides that alien spouses like Stanovsek "shall be considered to have been admitted" as LPRs.

The majority's reading is thus not required by, and is in numerous places contraindicated by, the text of the statute. In addition, that reading leads to absurd results. The majority's interpretation makes the congressional language impose *harsher* terms on aliens who enter completely legally (as aliens "lawfully admitted for permanent residence") than on any other category of entrants, including not only those who enter, for example, as tourists and later adjust their status, but even those who sneak across the border; those who overstay their visas; or those who violate any other type of entry requirement—by lying about qualifications, past history, or affiliations, for example. On the majority's interpretation, §212(h) waivers are in principle available to all such aliens—but not to those who entered legally and with the imprimatur of being "lawfully admitted for permanent residence." The BIA's alternative interpretation would

---

**2**To be sure, these sections apply to subchapter III and concern "[t]reatment of [the] period for purposes of naturalization," whereas the § 212(h) waiver is contained in subchapter II ("Immigration"). But the purpose of these sections is to clarify that, for purposes of naturalization, conditional LPRs should be treated no differently from non-conditional LPRs. In other words, the statutory language appears to *assume* that all non-conditional LPRs are "admitted as" such, and goes on to declare that conditional LPRs should likewise be treated as having been "admitted as" LPRs, notwithstanding their conditional status.

treat all LPRs alike for purposes of § 212(h), whether they entered as LPRs or adjusted their status.  That reading is both textually and logically sound.  As a result, the case for deference here is strong.

As the Supreme Court recently reiterated, "judicial deference to the Executive Branch is especially appropriate in the immigration context."  *Scialabba*, 134 S. Ct. at 2203.  "Under *Chevron*, the statute's plain meaning controls, whatever the Board might have to say.  But if the law does not speak clearly to the question at issue, a court must defer to the Board's reasonable interpretation, rather than substitute its own reading."  *Ibid.* (citations omitted).

Here, the majority should recognize that its interpretation of the statute is not the only reasonable one.  As a result, the court should have concluded that the statute was ambiguous.  That is, it is unclear whether the phrase "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence" is meant simply to reference all LPRs or, alternatively, to carve out for harsher treatment a subset of LPRs who first physically entered the United States in that capacity.  This case thus embodies the kind of "ambiguous provision in a complex statutory scheme" in which deference is appropriate.  *Id.* at 2213.

Here, as in *Scialabba*, "the Board chose a textually reasonable construction consonant with its view of the purposes and policies underlying immigration law."  *Ibid.*  Given that the BIA's construction is at least as viable as the majority's, and especially given the majority's own admission that its interpretation "make[s] little sense," the court should have deferred to the Board.  I therefore respectfully dissent.