In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3034

C.Y. WHOLESALE, INC., *et al.*,

*Plaintiffs-Appellees*,

*v.*

ERIC HOLCOMB, *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-02659 — **Sarah Evans Barker**, *Judge*.

ARGUED APRIL 14, 2020 — DECIDED JULY 8, 2020

Before EASTERBROOK, KANNE, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. A group of Indiana-based hemp
sellers and wholesalers sued the State of Indiana and its gov-
ernor, seeking to enjoin the enforcement of the state's criminal
prohibition on the manufacture, delivery, or possession of
smokable hemp. Ind. Code § 35-48-3-10.1. The plaintiffs (col-
lectively "C.Y. Wholesale") argue that Indiana's law is
preempted by the Agriculture Improvement Act of 2018 and
barred by the Commerce Clause of the Constitution. The

district court issued the requested injunction, and Indiana has appealed.

We conclude that although C.Y. Wholesale may have been entitled to block certain aspects of Indiana's law, the injunction before us sweeps too broadly. We therefore vacate it and remand to the district court for further proceedings.

## I

As part of the 2014 Farm Law, Congress permitted states and research institutions to cultivate industrial hemp for research purposes without needing first to obtain approval from the Drug Enforcement Administration (DEA). Industrial hemp is a product derived from the cannabis plant, but it is distinguishable from conventional marijuana in one crucial respect: it has a much lower concentration of tetrahydrocannabinol (THC), the principal psychoactive constituent of cannabis. The law defines industrial hemp as "the plant Cannabis sativa L. and any part of such plant, whether growing or not," with a delta-9 THC concentration of 0.3% or less. Pub L. No. 113-79, § 7606. The 2014 Law allowed states to continue to prohibit the production of industrial hemp, and it permitted cultivation only where it was "allowed under the laws of the State." *Id.* Under the 2014 Law, industrial hemp plants and seeds (as before) could "not be transported across State lines." 81 Fed. Reg. 53,395 (Aug. 12, 2016).

In 2018, Congress passed another Farm Law. This one expands the definition of industrial hemp to include not only all parts of the cannabis plant with a low THC concentration but also all low-THC cannabis derivatives. The 2018 Law excludes industrial hemp from the federal definition of marijuana, thus removing it from the DEA's schedule of controlled

substances. Pub. L. No. 115-334, § 12619 (codified at 21 U.S.C. §§ 802(16)(B)(i), 812). Nonetheless, the 2018 Law expressly provides that the states retain the authority to regulate the *production* of hemp. 7 U.S.C. § 1639p ("Nothing in this subsection preempts or limits any law of a State … that regulates the production of hemp and is more stringent than this subchapter."). Of interest here, the 2018 Law forbids the states from "prohibit[ing] the transportation or shipment of hemp or hemp products … through the State." *Id*. § 1639*o* note.

In 2019, Indiana passed Senate Enrolled Act 516 (Act 516), which brings Indiana's definition of industrial hemp into line with the 2018 federal definition and legalizes the commercial production of hemp in the state. The Act sets up a regulatory framework for the Indiana hemp industry, including the establishment of an advisory committee to create rules and regulations for hemp production. It criminalizes the possession of "smokable hemp," which it defines as any industrial hemp product "in a form that allows THC to be introduced into the human body by inhalation of smoke." Ind. Code § 35-48-1-26.6. The law stipulates that "[a] person who knowingly or intentionally manufactures, finances the manufacture of, delivers, finances the delivery of, or possesses smokable hemp … commits dealing in smokable hemp, a Class A misdemeanor." Ind. Code § 35-48-4-10.1. In this litigation, Indiana has represented to the court that one reason for these provisions in the Act is that its law enforcement officers find it nearly impossible to distinguish between low-THC smokable hemp and marijuana in the field.

Days before Act 516 was to go into effect, C.Y. Wholesale filed this suit, seeking a preliminary injunction against the provisions of the law that criminalized the manufacture,

financing, delivery, and possession of smokable hemp. C.Y. Wholesale argued that Act 516's prohibition on the possession and delivery of smokable hemp was preempted by the Farm Law's mandate that states allow all forms of industrial hemp to be *transported* through their territories. It additionally argued that Act 516 violated the federal Constitution's Commerce Clause. The district court found that the hemp sellers had shown a strong likelihood of success on the merits of their express preemption theory, and some likelihood of success on their conflict-preemption theory. It therefore issued an injunction blocking "the portions of [Act] 516 that criminalize the manufacture, financing, delivery, or possession of smokable hemp." The court did not address the plaintiffs' arguments under the Commerce Clause, but it did comment that it found this point "less convincing." Indiana has appealed from the issuance of the injunction. See 28 U.S.C. § 1292(a)(1).

After briefing in this appeal but before oral argument, Indiana passed Senate Enrolled Act 335 (Act 335), which limits the scope of Act 516. Act 335 clarifies that Indiana's prohibition on the delivery and possession of smokable hemp does "not apply to the shipment of smokable hemp from a licensed producer in another state in continuous transit through Indiana to a licensed handler in any state." Ind. Code § 35-48-4-10.1(c). Indiana asserts that this new language resolves any ambiguity in the statute that might have given rise to a problem with the express preemption clause of the Farm Law. At the time of oral argument before this court, Act 335 had been signed into law, but had not yet gone into effect. Both for that reason, and because many of the arguments are unaffected by Act 335, we focus primarily on Act 516.

**II**

As a preliminary matter, we note that the district court failed to enter a standalone document containing the injunction, as required by Federal Rules of Civil Procedure 65(d)(1)(C) and 58(a). We asked the parties to address the significance of this omission in their briefs. Both parties took the position that it was not a jurisdictional flaw. See *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387 (1978) ("[P]arties to an appeal may waive the separate judgment requirement of Rule 58."); *Metzl v. Leininger*, 57 F.3d 618, 619 (7th Cir. 1995) ("[V]iolations of Rule 58 are not jurisdictional."). We agree with that conclusion.

Nonetheless, the district court's failure to abide by the separate-document command is not, at least in this case, a technical nit that we can disregard. Instead, it has an effect on the clarity of the injunction. The court reasoned that Act 516 would put market participants who transport industrial hemp through Indiana at risk of criminal prosecution, in violation of the express preemption clause of the 2018 Farm Law. Yet it broadly enjoined the portions of Act 516 that criminalize much more than transportation, including the manufacture, financing, delivery, or possession of smokable hemp. It did so without any explanation of why that breadth was necessary. It seems to us that there is a missing step in the district court's reasoning. The failure to enter an independent injunction requires one to infer the scope of the injunction from the opinion, and regrettably, the opinion's conclusion is not fully supported by its analysis. The discipline of the separate-order rule would likely have averted this problem, and so we once again remind district judges not to overlook it.

**III**

We now move to the injunction itself. A preliminary injunction is appropriate where the party seeking it: (1) is likely to succeed on the merits; (2) is likely to suffer irreparable harm in the absence of preliminary relief; (3) has shown that the balance of equities tips in her favor; and (4) has shown that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

When reviewing the issuance of a preliminary injunction, this court "review[s] the district court's findings of fact for clear error, its legal conclusions *de novo*, and its balancing of the factors for a preliminary injunction for abuse of discretion." *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016). "The question for [this Court] is whether the judge exceeded the bounds of permissible choice in the circumstances, not what we would have done if we had been in his shoes." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Our focus here, as is often the case, is on the first issue: likelihood of success on the merits. At the district court, C.Y. Wholesale offered three principal reasons why it cleared that hurdle. First, it argued that Act 516 was expressly preempted by the terms of the 2018 Farm Law. Second, it argued that Act 516 was preempted by the 2018 Farm Law under principles of conflict preemption. Finally, it argued that Act 516 violates the Commerce Clause of the Constitution. We address these contentions in that order.

A

The district court found that federal law expressly preempted Act 516's provisions criminalizing the possession, manufacture, and delivery of smokable hemp. Express

preemption exists when Congress "declares its intention to preempt state regulation through a direct statement in the text of federal law." *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). When interpreting ambiguous statutes, courts favor the interpretation that does not preempt state law. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013).

The 2018 Farm Law provides that "[n]o State … shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 … through the State." Pub. L. 115-334, § 10114 (codified at 7 U.S.C. § 1639*o* note). At the same time, the Farm Law expressly authorizes the states to continue to regulate hemp production, by stating that nothing preempts any state law regulating hemp production, even if it is "more stringent" than federal law. Pub. L. 115-334, § 10113 (codified at 7 U.S.C. § 1639p). The 2018 Law says nothing about whether a state may prohibit possession or sale of industrial hemp.

The district court concluded, and C.Y. Wholesale argues on appeal, that the express preemption clause broadly precludes Indiana from prohibiting the possession, manufacture, and delivery of smokable hemp. Because one cannot transport hemp without possessing it, the court reasoned, the challenged provision of Act 516 necessarily prohibits the transportation of certain varieties of industrial hemp through Indiana in violation of the Farm Law. The same is true for the "delivery" of smokable hemp. A driver from Ohio travelling across Indiana to deliver smokable hemp to Illinois would violate Act 516's prohibitions on the possession and delivery of smokable hemp and be subject to criminal penalties. This, the

district court thought, would violate the Farm Law's express preemption clause.

As for the provision of Act 516 prohibiting the "manufacture" of smokable hemp, C.Y. Wholesale argues that "manufacture" differs from the "production" that the Farm Law leaves the states free to regulate. It argues that, in the agricultural context, "production" refers only to the growing of crops. "Manufacture," in C.Y. Wholesale's view, refers to the act of converting raw hemp into a smokable product. The Farm Law permits the states to regulate only production and thus leaves manufacture under the federal regime.

Indiana argues that the Farm Law does not expressly preempt Act 516, because the Farm Law expressly permits the states to continue to regulate hemp production. Even if manufacture differs from production, Indiana points out that the Law is silent on the question whether states are authorized to prohibit the manufacture of smokable hemp. Silence, it urges, does not give rise to express preemption. Moreover, Indiana points out that the Farm Law does not address possession at all. Once again, it contends that this omission reveals that Congress has not expressly preempted Act 516's prohibition on possession of smokable hemp. Indiana finally argues that one can transport smokable hemp through the state without violating its prohibition on possession of smokable hemp. This argument requires drawing a distinction between possession of something and "moving it around." Even a driver travelling through Indiana with a load of smokable hemp in the vehicle would, on this view, not be "in possession" of the hemp.

We are not persuaded by the last argument: hundreds of criminal cases under federal laws prohibiting possession of

controlled substances, or possession with intent to distribute, have involved highway stops of loaded trucks. A defense that "I was just moving the heroin around" would have been laughed out of court. But that point to one side, we conclude that the district court read the Farm Law's express preemption clause too broadly. The Farm Law authorizes the states to continue to regulate the production of hemp, and its express preemption clause places no limitations on a state's right to prohibit the cultivation or production of industrial hemp. Thus, the part of Act 516 prohibiting the manufacture of smokable hemp does not fall within the ambit of the Farm Law's express preemption clause. We are also unconvinced that the express preemption clause, standing alone, precludes a state from prohibiting the possession and sale of industrial hemp within the state. What it unequivocally does cover is the interstate transportation of smokable hemp. This means that a more limited injunction of Act 516 that addresses only transit through the state, along with ancillary restrictions on the possession and delivery of smokable hemp to the extent that those provisions interfere with that transit, is the most that would have been warranted on express preemption grounds.

B

C.Y. Wholesale has not, however, put all of its eggs in the express preemption basket. It also argues that the Farm Law preempts Act 516 through conflict preemption. In order to show conflict preemption, a plaintiff "must show either that it would be 'impossible' … to comply with both state and federal law or that state law … constitutes an 'obstacle' to satisfying the purposes and objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 650 (7th Cir.

2019). A court should not find conflict preemption "unless
that was the clear and manifest purpose of Congress." *Arizona
v. United States*, 567 U.S. 387, 400 (2012). The challenger must
show that applying the state law would do "major damage"
to clear and substantial federal interests. *Patriotic Veterans, Inc.
v. Indiana*, 736 F.3d at 1049; see also, *id*. at 1046 ("We ascertain
the intent of Congress, however, through a lens that presumes
that the state law has not been preempted.").

The district court found that C.Y. Wholesale had shown
some likelihood of success on its conflict preemption argu-
ment. It held that the Farm Law showed a clear intent on the
part of Congress to legalize all forms of low-THC hemp and
that the hemp sellers had shown at least some likelihood of
succeeding in their claim that Act 516 frustrated Congress's
purpose. The court concluded that the portions of Act 516 that
criminalize smokable hemp reach well beyond growing re-
strictions and thus do not qualify as regulations on hemp pro-
duction that come within the 2018 Farm Law's express anti-
preemption provision.

Here, too, although there is much that is sound in the dis-
trict court's reasoning, it does not support a complete injunc-
tion of Act 516. Although Congress may have relaxed federal
restrictions on low-THC cannabis in order to facilitate a mar-
ket for hemp, the Law indicates that the states were to remain
free to regulate industrial hemp production within their own
borders. Despite legalizing industrial hemp on the federal
level, the Farm Bill expressly permits the states to adopt rules
regarding industrial hemp production that are "more strin-
gent" than the federal rules. Pub L. 115-334 § 10113 (codified
at 7 U.S.C. § 1639p). The federal government has adopted a
similar stance towards other psychoactive drugs, such as

salvia, which are not scheduled by the DEA but which some states nonetheless choose to criminalize. Congress's silence on these drugs does not, through conflict preemption, preclude their proscription, nor does the 2018 Farm Bill's lenience toward industrial hemp. See *Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 500 (1988). We see nothing in the 2018 Farm Law that supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause.

C

Finally, C.Y. Wholesale argues in the alternative that Act 516 violates the Commerce Clause of the Constitution. The Commerce Clause prohibits a state from enacting any statute "that clearly discriminates against interstate commerce … unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Fort Gratiot Sanitary Landfill Inc. v. Michigan Dep't of Nat. Res.*, 504 U.S. 353, 359 (1992) (internal quotation marks omitted). The district court dispensed with this argument in a footnote, observing only that it found the argument "less convincing."

Indiana argues that a law violates the Commerce Clause only when it "discriminate[s] against interstate commerce, either expressly or in practical effect." *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017). The state contends that because Act 516 applies equally to all smokable hemp, whether produced inside or outside of Indiana, it does not discriminate between states and thus does not violate the Commerce Clause. C.Y. Wholesale, in response, relies upon *Kassel v. Consolidated Freightways Corporation of Delaware*, 450 U.S. 662 (1981), where the Supreme Court struck down an

Iowa law precluding trucks from pulling 65-foot trailers on the state's highways on the ground that the law "substantially burden[ed] the interstate flow of goods by truck." *Id.* at 671. According to C.Y. Wholesale, Act 516 burdens interstate commerce in the same way, by precluding a major industry from shipping its goods through the state by truck. As the district court held, this argument does not show sufficient promise of success on the merits to warrant a preliminary injunction. Further, this argument adds nothing of substance to C.Y. Wholesale's express preemption theory.

## IV

Although we find that the district court's injunction was too broad, we should not be misunderstood as saying that a properly tailored injunction is not warranted. It may well be that Indiana, in proscribing the possession of industrial hemp, has illegally prohibited the transportation of interstate shipments of industrial hemp. Should that be the case, the district court may appropriately issue an injunction preventing Indiana from enforcing its law against those transporting smokable hemp through Indiana in interstate commerce. A state cannot evade the Farm Law's express preemption of laws prohibiting the interstate transportation of industrial hemp by criminalizing its possession and delivery. On remand, the district court should evaluate whether Indiana's law violates the express preemption clause of the Farm Bill while keeping in mind the extent to which the Law reserves to the states the authority to regulate the production of industrial hemp.

Finally, we say a few words about Act 335, which Indiana passed after the district court enjoined the provisions of Act 516 at issue here. Act 335 modifies Act 516 to elaborate on the prohibition on possession and delivery of smokable hemp, in

a way consistent with Indiana's briefs in this court. Act 335 clarifies that Indiana's prohibition on the delivery and possession of smokable hemp does not apply to shipments from producers in other states that simply pass through Indiana. However, Act 335 still permits only shipments of smokable hemp through Indiana "from a licensed producer in another state … to a licensed handler in any state." We leave for the district court to decide whether this language violates the Farm Bill's express preemption clause, given that the Farm Bill places no such licensing limitation on the freedom to transport industrial hemp through states that regulate or prohibit its production.

One final point is worth noting. When this litigation began, the Midwest Hemp Council, an Indiana-based advocacy group for the hemp industry, was a party to this case. It has since dropped out of the litigation. On remand, the district court should take care to ensure that the remaining plaintiffs have standing to challenge the licensing provision. All plaintiffs at this point are Indiana based hemp sellers and wholesalers. They were affected by the broader injunction, but they may not be the right parties to challenge Indiana's requirement that businesses seeking to transport smokable hemp through the state be licensed in the states in which they do business.

## V

Because the district court's injunction swept too broadly, we REVERSE the decision of the district court and REMAND for proceedings consistent with this opinion.