2024 IL App (3d) 240210

Opinion filed August 13, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| CHARLES WASHINGTON and KATIE SIMS, Individually and on Behalf of Similarly Situated Individuals, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0210 Circuit No. 21-L-816 |
| PERSONA IDENTITIES, INC., | ) ) | Honorable Barbara N. Petrungaro, |
| Defendant-Appellee. | ) ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Hettel and Albrecht concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Charles Washington and Katie Sims, sued Persona Identities, Inc. (Persona), a software company that provides businesses automated identity verification services, alleging violations of the Biometric Information Privacy Act (740 ILCS 14/1 *et seq.* (West 2022)). Relying on a contract under which it claimed beneficiary status, Persona moved to stay plaintiffs' claims and compel arbitration. The circuit court granted the motion, and plaintiffs appealed. For the reasons that follow, we hold Persona has no legitimate basis to compel plaintiffs' claims to arbitration. Accordingly, we reverse the court's order.

## I. BACKGROUND

In 2021, plaintiffs registered to become delivery drivers for DoorDash, Inc. (DoorDash), a company that provides an online marketplace platform connecting consumers, restaurants, and delivery drivers. DoorDash's registration process requires prospective drivers to submit live "selfies" along with photographs of their driver's license cards. After registration, DoorDash occasionally prompts its drivers to re-verify their identities by submitting selfies on its mobile application. DoorDash authenticates its drivers' identities using Persona's identity verification software interface, which collects, analyzes, and stores scans of the drivers' facial geometries.

As part of the registration process, plaintiffs submitted selfies and photographs of their driver's license cards. They also accepted DoorDash's "Independent Contractor Agreement" (Agreement), which provided the following:

> "This Agreement ('Agreement') is made and entered by and between you, the undersigned contractor ('CONTRACTOR'), an independent contractor engaged in the business of performing the services contemplated by this Agreement, and DoorDash, Inc. ('DOORDASH' or 'COMPANY'). ***.
>
> * * *
>
> ***. DOORDASH and CONTRACTOR (collectively 'the parties') agree as follows:
>
> I. PURPOSE OF THE AGREEMENT
>
> 1. This Agreement governs the relationship between DOORDASH and CONTRACTOR, and establishes the parties' respective rights and obligations. ***.
>
> * * *
>
> IV. RELATIONSHIP OF PARTIES

2

1. The parties acknowledge and agree that this Agreement is between two co-equal, independent business enterprises that are separately owned and operated. \*\*\*.

\* \* \*

VIII. PERSONNEL

1. In order to perform any Contracted Services, CONTRACTOR must, for the safety of consumers on the DOORDASH platform, pass a background check administered by a third-party vendor, subject to CONTRACTOR's lawful consent. \*\*\*.

\* \* \*

XI. MUTUAL ARBITRATION PROVISION

1. CONTRACTOR and DOORDASH mutually agree to this Mutual Arbitration Provision, which is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ('FAA') and shall apply to any and all disputes arising out of or relating to this Agreement \*\*\* and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law \*\*\*, and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH. The parties expressly agree that this Agreement shall be governed by the FAA even in the event CONTRACTOR and/or DOORDASH are otherwise exempted from the FAA. Any disputes in this regard shall be resolved exclusively by an arbitrator. If for any reason the FAA does not

apply, the state law governing arbitration agreements in the state in which the CONTRACTOR operates shall apply.

\* \* \*

9. CONTRACTOR's Right to Opt Out of Mutual Arbitration Provision. Arbitration is not a mandatory condition of CONTRACTOR's contractual relationship with DOORDASH, and therefore CONTRACTOR may submit a statement notifying DOORDASH that CONTRACTOR wishes to opt out and not be subject to this MUTUAL ARBITRATION PROVISION.

\* \* \*

XVII. MISCELLANEOUS

\* \* \*

3. GOVERNING LAW: Except for the Mutual Arbitration Provision above, which is governed by the Federal Arbitration Act, the choice of law for interpretation of this Agreement, and the right of the parties hereunder, as well as substantive interpretation of claims asserted pursuant to Section XI, shall be the rules of law of the state in which CONTRACTOR performs the majority of the services covered by this Agreement."

¶ 5    Plaintiffs filed suit in late 2021 and twice amended their complaint. Their second amended complaint is styled as a class action lawsuit, purporting to be on behalf of plaintiffs and a proposed class of "Illinois residents whose biometric identifiers or biometric information were possessed by [Persona] at any time within the applicable limitation period." The complaint seeks injunctive relief and statutory damages. It alleges Persona wrongfully possessed and profited from the class

4

members' biometric information because it failed to publicly disclose its biometric retention and destruction policy upon collecting that information.

¶ 6    In September 2023, Persona moved (1) to stay plaintiffs' claims under section 3 of the Federal Arbitration Act (FAA) (9 U.S.C. § 3 (2018)) and (2) to compel individual arbitration of plaintiffs' claims under section 4 of the FAA (*id.* § 4). Persona asserted third-party beneficiary status under the Agreement and argued the Agreement's arbitration provision was broad enough to cover plaintiffs' claims against it. Attached to Persona's motion was a declaration from DoorDash that plaintiffs had not opted out of the arbitration provision. Plaintiffs, in response, argued Persona provided no evidence of its involvement in DoorDash's background check process. They noted DoorDash's website identifies "Checkr"—not Persona—as the entity performing background checks for DoorDash.

¶ 7    In February 2024, the circuit court granted Persona's motion, finding Persona was an intended third-party beneficiary of the Agreement. The court explained,

> "In this case, Plaintiffs' identities are verified using Persona's [software] to aid in the process of the background check. As such, [Persona] is part of the background check process and thus, an intended third-party beneficiary to the Agreement. The parties are required to submit this dispute to arbitration."

Plaintiffs now appeal that decision under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 8                                II. ANALYSIS

¶ 9    Plaintiffs contend the circuit court erred in finding Persona was an intended third-party beneficiary of the Agreement. They further contend the court improperly made a factual determination by finding Persona was "part of DoorDash's background check process." Persona,

5

in contrast, urges us to dismiss the appeal for lack of jurisdiction and, alternatively, to affirm the court's ruling and its finding that Persona was an intended third-party beneficiary of the Agreement.

¶ 10                                          A. Jurisdiction

¶ 11        We begin by considering our jurisdiction. See *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 37 ("[A] jurisdictional claim is a threshold issue that must be addressed before considering an appeal's merits."). Plaintiffs appeal from an interlocutory order granting a motion to compel arbitration and stay the court proceedings. Because such an order is akin to an injunction (*Royal Indemnity Co. v. Chicago Hospital Risk Pooling Program*, 372 Ill. App. 3d 104, 107 (2007)), it is appealable under Rule 307(a)(1), which allows us to review interlocutory orders "granting *** an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). Nevertheless, Persona argues section 16(b) of the FAA preempts Rule 307(a)'s operation in this case and, moreover, the Agreement expressly states the FAA governs the arbitration provision. Section 16(b) provides,

> "Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
>
>> (1) granting a stay of any action under section 3 of this title;
>>
>> (2) directing arbitration to proceed under section 4 of this title;
>>
>> (3) compelling arbitration under section 206 of this title; or
>>
>> (4) refusing to enjoin an arbitration that is subject to this title." 9 U.S.C § 16(b) (2018).

¶ 12        The supremacy clause of the United States Constitution nullifies state laws that impede or conflict with federal law. *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S.

707, 712 (1985); U.S. Const., art. VI, cl. 2. Federal preemption under the supremacy clause can be express or implied. *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39-40 (2010). Under either form of preemption, Congress's preemptive intent must be "clear and manifest." *Haage v. Zavala*, 2021 IL 125918, ¶ 72.

¶ 13　　　　Express preemption applies when a federal statute's express language indicates an intention to preempt state law. *Id.* Implied preemption takes two forms: (1) field preemption, where Congress leaves no room for state action by enacting a comprehensive regulatory scheme, and (2) conflict preemption, where state action conflicts with federal law such that it hinders Congress's objectives. *Carter*, 237 Ill. 2d at 39-40. According to Persona, conflict preemption precludes Rule 307(a)'s operation because the rule directly conflicts with section 16(b), which "is closely tied to the substance of the FAA and advances clear congressional objectives."

¶ 14　　　　Persona does not specify which subsection of section 16—(b)(1), (b)(2), (b)(3), or (b)(4)— applies to the circuit court's interlocutory order. Persona's motion in the circuit court, however, was based expressly on sections 3 and 4 of the FAA. Thus, we presume Persona relies on subsections (b)(1) and (b)(2) of section 16. See 9 U.S.C § 16(b)(1), (2) (2018) (generally prohibiting appeals from interlocutory orders granting a stay of any action under section 3 of the FAA and orders directing arbitration to proceed under section 4 of the FAA).

¶ 15　　　　A statute's plain language most reliably reflects congressional intent. *Papazoglou v. Holder*, 725 F.3d 790, 792-93 (7th Cir. 2013). Here, the FAA's plain language does little to support Persona's jurisdictional argument. Sections 16(b)(1) and (b)(2) are premised on the existence of court rulings under sections 3 and 4 of the FAA. Section 3 provides as follows:

> "If any suit or proceeding be brought in *any of the courts of the United States*
>
> upon any issue referable to arbitration under an agreement in writing for such

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ***." (Emphasis added.) 9 U.S.C. § 3 (2018).

Section 4 provides as follows:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any United States district court* *** for an order directing that such arbitration proceed in the manner provided for in such agreement." (Emphasis added.) *Id.* § 4.

¶ 16　　The United States Supreme Court has called into question sections 3 and 4's applicability to state courts:

"While we have held that the FAA's 'substantive' provisions—§§ 1 and 2—are applicable in state as well as federal court, see *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984), we have never held that §§ 3 and 4, *which by their terms appear to apply only to proceedings in federal court*, see 9 U.S.C. § 3 (referring to proceedings 'brought in any of the courts of the United States'); § 4 (referring to 'any United States district court'), are nonetheless applicable in state court. See *Southland Corp. v. Keating*, *supra*, at 16, n. 10 (expressly reserving the question whether '§§ 3 and 4 of the Arbitration Act apply to proceedings in state courts'); see also *id.*, at 29 (O'CONNOR, J., dissenting) (§§ 3 and 4 of the FAA apply only in federal court)." (Emphasis added.) *Volt Information Sciences, Inc. v.*

*Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 n.6 (1989).

Consistent with the Supreme Court's observation, we find sections 3 and 4 are missing a "clear and manifest" intent to bind state courts. See *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020) ("A court should not find conflict preemption 'unless that was the clear and manifest purpose of Congress.' " (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)). By way of corollary, sections (16)(b)(1) and (b)(2)—which are predicated on sections 3 and 4, respectively—lack a clear intent to bind state courts. Thus, where no conflict preemption exists, we see no issue exercising our jurisdiction under Rule 307(a)(1).

¶ 17        Nonetheless, Persona argues that, under the facts of this case, section 16(b) preempts Rule 307(a)(1) because the rule stands as an obstacle to the FAA's goals.[1] Under the conflict preemption doctrine, federal law preempts state law to the extent the state law "actually conflicts with federal law—that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Internal quotation marks omitted.) *Volt Information Sciences, Inc.*, 489 U.S. at 477. Thus, to establish conflict preemption, Persona "must show that applying the state law would do 'major damage' to clear and substantial federal interests." *Holcomb*, 965 F.3d at 547 (quoting *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013)). Persona has not made this showing.

---

[1] In considering Persona's argument, we assume, for the sake of argument, that sections 3 and 4 apply to state courts. In a case predating *Volt Information Sciences, Inc.*, the Supreme Court stated that, despite section 3's ambiguous reference to a suit "in any of the courts of the United States," state courts have almost unanimously recognized section 3's application to state court actions. (Internal quotation marks omitted.) *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 n.34 (1983). The Court continued, "It is less clear, however, whether the same is true of an order to compel arbitration under § 4 of the [FAA]." *Id.* at 26.

9

¶ 18    The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 24 (1983). Its basic purpose is to "overcome the historical reluctance of courts to enforce agreements to arbitrate." *Carter*, 237 Ill. 2d at 41. "When Congress passed the FAA in 1925, it intended courts to enforce agreements by parties to arbitrate and to place such agreements on the same footing as other contracts." *Id.* State law stands as an obstacle to the FAA's objectives, therefore, when it frustrates arbitration or treats arbitration terms unfavorably compared to other contractual terms. *Id.*

¶ 19    Rule 307(a)(1) does not undermine the FAA's objectives. It does not discriminate against arbitration agreements in any way, nor does it dissuade courts from enforcing arbitration agreements. The rule does nothing more than permit appeals of interlocutory orders involving injunctions. Moreover, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Information Sciences, Inc.*, 489 U.S. at 476. Here, plaintiffs argue Persona is a total stranger to the contract between them and DoorDash. Addressing this issue on appeal does not perpetuate "the historical reluctance of courts to enforce agreements to arbitrate." On the contrary, it is entirely consistent with Congress's intent to place arbitration agreements on the same footing as other contracts. Indeed, "the first principle of our FAA jurisprudence[ ] [is] that arbitration is strictly a matter of consent." (Internal quotation marks omitted.) *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 651 (2022). Until a court establishes that a party to a contract has *agreed* to arbitrate with a nonparty, there is simply no agreement to arbitrate. *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). This appeal, therefore, is not at odds with the FAA's goal of ensuring arbitration agreements are enforced according to their terms

and placed on the same footing as other contracts. Section 16(b) of the FAA does not supersede Rule 307(a)(1).

¶ 20 Finally, Persona urges us to dismiss this appeal because doing so "would be consistent with the parties' expectations under the [ ] Agreement," which expressly provides that the FAA governs the arbitration provision. This argument puts the cart before the horse. Although the FAA may indeed govern the Agreement's arbitration provision, Persona is not a party to the Agreement, and only parties to a contract may invoke its choice-of-law provision. *Maldonado v. Creative Woodworking Concepts, Inc.*, 342 Ill. App. 3d 1028, 1032 (2003). Insofar as Persona seeks to invoke an enforcement right *as a nonparty*, such a right is governed by state law, not by the FAA. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) ("A nonparty's right to enforce an arbitration agreement is governed by state law.").

¶ 21 Thus, we reject Persona's jurisdictional challenge and now consider the fundamental issue at hand: whether Persona may enforce the arbitration provision as a nonparty to the Agreement.

¶ 22                                    B. Third-Party Beneficiary Status

¶ 23 In a Rule 307(a)(1) appeal, the only issue is whether a sufficient showing was made to sustain the circuit court's order. *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 20. When the circuit court conducts an evidentiary hearing before entering its order, we review that order for an abuse of discretion. *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 12. But when, as here, the court does not hold an evidentiary hearing, our review is *de novo*. *Id.*; see *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009) (a reviewing court is not bound by a circuit court's findings based purely on legal argument and a documentary record equally available to the reviewing court). Moreover, whether Persona can enforce the Agreement's arbitration

provision involves a contract interpretation question, which we consider *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

¶ 24    Persona argues it is entitled to enforce the arbitration provision as a third-party beneficiary of the Agreement. Plaintiffs, in turn, challenge Persona's claim to beneficiary status, arguing the Agreement does not express a clear intent to confer a direct benefit on Persona. We agree with plaintiffs.

¶ 25    Other than parties to an arbitration agreement, only third-party beneficiaries may compel arbitration or be compelled to arbitrate. See *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 26. Crucially, Illinois law distinguishes between intended and incidental third-party beneficiaries. *Id.* ¶ 27. An intended third-party beneficiary is one whom the contracting parties *intended to directly benefit*, while an incidental third-party beneficiary is one who receives an unintended benefit from the contract. *Id.* Only an intended third-party beneficiary may enforce rights under a contract. *Id.*

¶ 26    We look to the Agreement's language to determine whether plaintiffs and DoorDash intended to directly benefit Persona. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). "Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.* A strong presumption exists that contracting parties intend their contract to apply solely to themselves, and not to third parties. *Id.*; *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177 (1989). "[T]o overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Ball Corp.*, 187 Ill. App. 3d at 177. "That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the

direct benefit of the parties." *Martis*, 388 Ill. App. 3d at 1020. The party asserting intended beneficiary status bears the burden of showing the contract grants it a direct benefit. *Id.*

¶ 27    Persona argues it is an intended third-party beneficiary because it "clearly falls under the identified class of third-party vendors included in DoorDash's Agreement." Specifically, Persona points to the Agreement's "background check" provision:

> "In order to perform any Contracted Services, CONTRACTOR must, for the safety of consumers on the DOORDASH platform, *pass a background check administered by a third-party vendor*, subject to CONTRACTOR's lawful consent." (Emphasis added.)

According to Persona, its identity verification service is a logical first step in the background check process and, therefore, Persona falls within the ambit of third-party vendors contemplated by the Agreement. Persona also directs our attention to the arbitration provision itself, which states, "CONTRACTOR and DOORDASH mutually agree to this Mutual Arbitration Provision, which *** shall apply to *any and all disputes* arising out of or relating to this Agreement, *** and *all* other aspects of CONTRACTOR's relationship with DOORDASH." (Emphases added.) Persona argues this broad language, in conjunction with the "background check" provision, indicates Persona is an intended third-party beneficiary of the Agreement. We disagree. Contrary to Persona's position, the Agreement lacks clear intent to directly benefit Persona.

¶ 28    First, the admittedly "generic" arbitration provision falls short of a clear indication the Agreement applies to nonparties. Although the arbitration provision encompasses an almost limitless range of arbitrable dispute topics, it is silent about nonparties. *Cf. Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 733-34 (N.D. Ill. 2023) (facial recognition software provider was a third-party beneficiary of Uber driver contracts where drivers agreed to arbitrate disputes between

13

themselves and " 'any other entity' " concerning Uber's platform and driver app). Unless a nonparty is expressly named or its class described, a generic arbitration clause—no matter how broad—cannot show an intent to directly benefit the nonparty. See *Martis*, 388 Ill. App. 3d at 1020.

¶ 29        Second, the "background check" provision does little more than confer an incidental benefit on "a third-party vendor." The provision states, in part, "CONTRACTOR must, for the safety of consumers on the DOORDASH platform, pass a background check administered by a third-party vendor." This provision does not identify the third-party vendor as an intended beneficiary or otherwise grant the third-party vendor a direct benefit. In fact, with the exception of DoorDash consumers, for whose safety the background check is required, the provision does not connote an intent to benefit *any* nonparty. The contracting parties may have known, expected, or even intended "a third-party vendor" to benefit from the Agreement; however, that is hardly enough to overcome the presumption the Agreement was intended for the direct benefit of the contracting parties alone. See s*upra* ¶ 4 ("This Agreement governs the relationship between DOORDASH and CONTRACTOR"; "this Agreement is between two co-equal, independent business enterprises"; "CONTRACTOR and DOORDASH mutually agree to this Mutual Arbitration Provision ***." (Internal quotation marks omitted.)).

¶ 30        Thus, even when viewing the arbitration and "background check" provisions in tandem, we fail to discern an implication "so strong as to be practically an express declaration" that the Agreement applies to nonparties. See *Ball Corp.*, 187 Ill. App. 3d at 177.

¶ 31        Finally, even if we presume the Agreement confers a direct benefit on "a third-party vendor," Persona must prove it is that vendor. *Martis*, 388 Ill. App. 3d at 1020 (burden of proof lies with the party asserting third-party beneficiary status). Under the Agreement, a third-party vendor administers background checks on DoorDash's behalf. Persona, however, points us to no

evidence that it administers background checks. Nor does it contest plaintiffs' evidence that suggests DoorDash distinguishes between background checks, administered by Checkr, and identity verification, automated by Persona's software interface. Instead, Persona argues we should conclude, "based on common understanding," that identity verification is a necessary step in a background check.[2] We decline to draw any inferences in Persona's favor. A motion to compel arbitration is essentially a section 2-619(a)(9) motion (*Sturgill*, 2016 IL App (5th) 140380, ¶ 21), and when ruling on a section 2-619 motion, the court draws all reasonable inferences *in the nonmovant's favor* (*Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538, 540 (2005)). Notably, Persona secured from DoorDash a declaration addressing whether plaintiffs opted out of the arbitration provision, yet it failed to secure a declaration addressing the identity of DoorDash's third-party vendor. The conclusion that Persona administers background checks is simply unsubstantiated.

¶ 32       Remarkably, despite concluding Persona was an intended third-party beneficiary, the circuit court did not find that Persona *administers* background checks. It found merely that Persona's software "aids" in the background check process. The lack of evidence notwithstanding, to "aid" is not to "administer." Compare Merriam-Webster's Collegiate Dictionary 16 (11th ed. 2020) ("administer" means "to manage or supervise the execution, use, or conduct of"), with 26 ("aid" means "to give assistance"). Persona's role—limited to providing a software interface that automates identity verification—is a far cry from managing or supervising the execution, use, or conduct of the background checks. Persona can lay claim, at best, to an *auxiliary* role in the background checks, which are otherwise administered by an unidentified third-party vendor. It

---

[2]At one point in its brief, Persona seemingly concedes that a background check is distinct from identity verification: "Identifying materials *** are often gathered by employers to cross-reference and verify identity *before* submitting a potential employee to a background check." (Emphasis added.)

15

cannot, however, reasonably claim it falls within the ambit of third-party vendors charged with administering background checks.

¶ 33 In short, the Agreement lacks clear intent to directly benefit a class of entities to which Persona belongs. Accordingly, Persona may not assert intended third-party beneficiary status. The circuit court erroneously granted Persona's motion to stay claims and compel arbitration.

¶ 34 III. CONCLUSION

¶ 35 We reverse the order of the circuit court of Will County and remand for further proceedings

¶ 36 Reversed and remanded.

*Washington v. Persona Identities, Inc.*, 2024 IL App (3d) 240210

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 21-L-816; the Hon. Barbara N. Petrungaro, Judge, presiding. |
| **Attorneys for Appellant:** | David L. Gerbie, Andrew T. Heldut, Colin P. Buscarini, and Jordan R. Frysinger, of McGuire Law, P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Joel C. Griswold, Bonnie Keane DelGobbo, and Maria A. Boelen, of Baker & Hostetler LLP, of Chicago, for appellee. |