# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00722-CR

---

## Ex parte Daniel Colunga

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2023-504B,
### THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Colunga was charged with the offense of possession of a controlled substance, specifically Tetrahydrocannabinol. Colunga filed a pretrial application for writ of habeas corpus, which the district court denied. In two issues on appeal, Colunga asserts that the statute under which he was charged was unconstitutional because (1) it was preempted by federal law and (2) it was "temporarily vague" at the time of the alleged offense. We will affirm the district court's order.

## BACKGROUND

The State alleged that on or about April 20, 2019, Colunga possessed "Tetrahydrocannabinol, a substance in Penalty Group 2 other than marijuana and the synthetic equivalents of the substances contained in the plant or the resinous extractives of Cannabis or synthetic substances, derivatives, and their isomers with similar chemical structure as pharmacological activity, having an aggregate weight, including any adulterants or dilutants, of

less than one gram."[1]  Tetrahydrocannabinol, also known as THC, is a psychoactive substance contained in the plant Cannabis sativa L.  *See Texas Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 658 (Tex. 2022).  In Texas, possession of THC is generally (but not always) prohibited.  *See* Tex. Health & Safety Code §§ 481.103(a)(1) (listing THC as controlled substance in Penalty Group 2), .116(a) (providing that person commits offense "if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 2, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice").

We begin with a brief discussion of the legal background of THC regulation, as it assists in understanding the preemption issue in this case.  The cannabis plant containing THC is commonly referred to as either "marijuana" or "hemp," depending on the context in which the plant is used.  *See Crown Distrib. LLC*, 647 S.W.3d at 658.  "Hemp—as the cannabis plant was commonly called—was a 'staple crop' in the American colonies and used throughout early American history to produce a number of products including clothing and other textiles, rope,

---

[1]  At this stage of the proceedings, the record contains limited information regarding the circumstances surrounding Colunga's alleged possession of THC, but in his brief, Colunga provides the following factual summary:

> On April 20, 2019, at approximately 9:08 p.m., Daniel Colunga was driving a vehicle when he was stopped for speeding.  After executing the traffic stop, Trooper Brian Abshire observed a bottle of vodka that had previously been opened and small green leafy substances, in the passenger side of the vehicle. After inquiring about the alcohol, the Trooper conducted a search of the vehicle. In the center console, the Trooper located a small vile that contained a tan oil substance and a[n] empty box labeled Kingpen.  The Trooper asked Colunga if the oil contained THC and Colunga stated "it might."  The Trooper then stated "that's a felony."  Colunga was arrested for Possession of a Controlled Substance Penalty Group 2 less than 1 gram.

2

paper, and medicines." *Id*. However, in the 1900s, "Americans increasingly began referring to the plant by the name 'marihuana' (or 'marijuana'), particularly when used—or when referring to the parts of the plant used—to produce a high." *Id*.

"As use of the Cannabis sativa L. plant as an intoxicant gained in popularity, government efforts to control, restrict, or prohibit that use quickly followed," *id.* at 658, eventually leading to its prohibition both federally and in Texas and other states, *id.* at 658-60. At the federal level, the 1970 Controlled Substances Act "defined 'marihuana' anatomically to mean 'all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin,'" which included THC. *Id*. at 660. "Because the Controlled Substances Act completely prohibited substances containing any amount of THC, the federal Drug Enforcement Agency interpreted the law as banning all forms of the Cannabis sativa L. plant, whether considered 'hemp' or 'marihuana.'" *Id.* "When Texas enacted its own Controlled Substances Act in 1973, it 'carried forward' the same definition from the federal law." *Id.* (citing *Williams v. State*, 524 S.W.2d 705, 710 (Tex. Crim. App. 1975)).

"Congress began to change the legal landscape by passing the 2014 Farm Bill," which "adopted a completely new approach to distinguishing between legal and illegal cannabis." *Id*. at 661. The bill defined marijuana as "all parts of the [cannabis] plant except for 'hemp,' and then defined hemp to mean all parts of the Cannabis sativa L. plant with a THC concentration of no more than 0.3 percent by dry weight." *Id.* "As a result, the statute distinguished between legal hemp and illegal marihuana based on its chemical concentration of the ingredient that produces a high, instead of on the anatomical parts that historically contained that ingredient in higher concentrations." *Id.*

Congress went a step further with the 2018 Farm Bill, which removed hemp "from federal controlled-substance schedules and provided instead for it to be regulated as an agricultural product." *Id.* Also, "the bill permitted each state to develop its own plan for developing the hemp industry within its borders, with federal approval." *Id.* In a section titled, "Interstate Commerce," the bill contains a provision that forbids states from "prohibiting the transportation or shipment of hemp or hemp products . . . through the State." Pub. L. No. 115-334 § 10114 (codified at 7 U.S.C. § 1639o note). The bill also contains an express "no preemption" clause stating that "[n]othing in this subsection preempts or limits any law of a State . . . that regulates the production of hemp" and "is more stringent than this subtitle," Pub. L. 115-334, § 10113 (codified at 7 U.S.C. § 1639p). The bill is silent regarding whether a state may prohibit possession of hemp. *See C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020).

With the federal regulatory framework in mind, Texas Department of State Health Services, on March 15, 2019, issued an order removing hemp from its definition of marijuana and its schedule of controlled substances. *See* Dep't of State Health Servs., *Order Removing Hemp, as Defined by the Agricultural Marketing Act of 1946, From Schedule I*, 44 Tex. Reg. 1467, 1467–69 (2019). At around the same time, the Texas Legislature, through the enactment of House Bill 1325, "adopted a hemp plan at its next legislative session in 2019." *Crown Distrib. LLC*, 647 S.W.3d at 650. In the bill, Texas "followed the federal approach to distinguishing between marihuana and hemp." *Id.* at 661. Specifically, House Bill 1325 amended the Health and Safety Code's definition of "Controlled substance" to expressly exclude "hemp, as defined by Section 121.001, Agriculture Code, or the tetrahydrocannabinols in hemp," *see* Tex. Health & Safety Code § 481.002(5), and amended the definition of marijuana to

4

expressly exclude "hemp, as that term is defined by Section 121.001, Agriculture Code," *see id.* § 481.002(26)(F). Section 121.001 of the Agriculture Code defined hemp as "the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Tex. Agric. Code § 121.001.

"As a result of these revisions, the Cannabis sativa L. plant and its parts and derivatives that historically were illegal . . . can now be legally cultivated in Texas, so long as they contain a THC concentration of no more than 0.3 percent." *Crown Distrib. LLC*, 647 S.W.3d at 662. "Under the new statutory framework, all such parts of the Cannabis sativa L. plant now qualify as 'hemp,' and no longer qualify as 'marihuana.'" *Id.* "Farmers can produce hemp by controlling a plant's THC levels in a number of ways, including by selective breeding and by harvesting the plant before its THC concentration exceeds 0.3 percent." *Id.* "But the only way to distinguish between a legal 'hemp' plant, part, or product and an illegal 'marihuana' plant, part, or product is to test its THC concentration forensically; they are 'virtually indistinguishable by sight or smell alone.'" *Id.* (quoting Ryan Golden, *Dazed & Confused: The State of Enforcement of Marijuana Offenses After the Texas Hemp Farming Act*, 72 Baylor L. Rev. 737, 739 (2020)).

The 2018 Farm Bill became effective on December 20, 2018. House Bill 1325 became effective on June 10, 2019. Colunga allegedly committed and was arrested for the charged offense on or about April 20, 2019. Before trial, Colunga filed a pretrial application for writ of habeas corpus based solely on his contention that the 2018 Farm Bill preempted what he

termed Texas's "blanket prohibition on all 'Tetrahydrocannabinols other than marihuana' that was in effect at the time of the arrest."

The district court held a brief non-evidentiary hearing on the application. At the hearing, the following occurred:

[The Court]:   This is not a manufacture/delivery case, is it?

[Defense counsel]: It's a possession case.

[The Court]:   It's not a man/del, right?

[Defense counsel]: Correct, your Honor.

Defense counsel then handed the district court a copy of the 2018 Farm Bill and argued that "transportation of hemp" was "equivalent to possession of it." The district court disagreed, stating that "[p]ossession and transport are completely separate."

The State interjected that the 2018 Farm Bill "also says across state lines, which has nothing to do with [this] case whatsoever. We're not doing anything about transporting over state lines." The State added that Colunga was "trying to say that the Texas law is invalid" and that Colunga failed to provide notice to the Office of the Attorney General of his challenge to the constitutionality of the Texas statute as required by law. *See* Tex. Gov't Code § 402.010; *see also* Tex. Const. art. V, § 32 (similarly requiring notice to attorney general of challenge to constitutionality of statute).

The district court then observed that the 2018 Farm Bill "deals with production and transportation of hemp." It explained,

6

> This agriculture act that you have provided me deals with basically production, those producing hemp and those transporting hemp. And looking at the intent of the statute, everything in here has to do with regulatory agencies for production of hemp. That's why I asked if this was a man/del case because then I think maybe it would be applicable. But this is not a man/del. It's simply a possession case.

Defense counsel argued that transportation "includes" possession, while the district court maintained that this was not a production or transportation case. The district court then ruled, "Writ denied" and later made a written order to that effect. Colunga filed a notice of appeal and shortly thereafter filed notice to the Attorney General's Office that he was challenging the constitutionality of a state statute.

**STANDARD OF REVIEW**

"[P]retrial habeas, followed by an interlocutory appeal, is an 'extraordinary remedy,' and 'appellate courts have been careful to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage.'" *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). When reviewing a trial court's decision on a pretrial application for writ of habeas corpus, we review the facts in the light most favorable to the trial court's ruling and, absent an abuse of discretion, uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles,'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)), or unless the trial court's decision "falls outside the zone of reasonable disagreement," *Johnson v. State*, 490 S.W.3d 895, 908 (Tex.

Crim. App. 2016). Although we defer to a trial court's factual findings in habeas proceedings, we review questions of law, such as the constitutionality of a statute, de novo. *See Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Ex parte Estrada*, 573 S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "We will uphold the trial court's ruling as long as it is correct on any theory of law applicable to the case." *Ex parte LaValle*, 705 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd).

## DISCUSSION

**Preemption**

In his first issue, Colunga asserts that Texas's "total ban" of THC was unconstitutional from December 20, 2018, until June 10, 2019, because it was preempted by federal law during that time. He contends that at the time of his arrest, federal and Texas law were in conflict and thus the Texas law prohibiting possession of THC was "void."

In response, the State first argues that Colunga failed to properly notify the Office of the Attorney General of his constitutional challenge as required by law. We agree. The Texas Government Code provides:

> (a) In an action in which a party to the litigation files a petition, motion, or other pleading challenging the constitutionality of a statute of this state, the party shall file the form required by Subsection (a-1). The court shall, if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional challenge and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general either by certified or registered mail or electronically to an e-mail address designated by the attorney general for the purposes of this section.

> (a-1) The Office of Court Administration of the Texas Judicial System shall adopt the form that a party challenging the constitutionality of a statute of this state must file with the court in which the action is pending indicating which pleading should

8

be served on the attorney general in accordance with this section.

(b) A court may not enter a final judgment holding a statute of this state unconstitutional before the 45th day after the date notice required by Subsection (a) is served on the attorney general.

Tex. Gov't Code § 402.010.

The record reflects that Colunga did not file the required form at any time prior to the district court ruling on his application for writ of habeas corpus, and there is no indication in the record that the Office of the Attorney General had notice of Colunga's constitutional challenge to the statute. Absent proper notice to the Office of the Attorney General, the district court would not have abused its discretion in denying relief and in fact would have abused its discretion if it had granted relief at that time. *See In re Ginsberg*, 630 S.W.3d 1, 12 (Tex. Spec. Ct. Rev. 2018) ("A trial court abuses its discretion in holding a statute unconstitutional less than 45 days after providing the required notice to the attorney general."); *see also In re State*, No. 04-14-00282-CV, 2014 WL 2443910, *4 (Tex. App.—San Antonio May 28, 2014, orig. proceeding) (mem. op.) (conditionally granting State's petition for writ of mandamus and directing trial court to vacate its order rendered in violation of section 402.010).

Moreover, Colunga did not specify in the court below whether he was arguing that the Texas ban on possession of THC was unconstitutional as applied to him or if it was facially unconstitutional. To the extent that he was attempting to raise an as-applied challenge, based on the application of the law to his particular facts and circumstances, such a claim is generally not cognizable on pretrial habeas. *See Ex parte Aparicio*, 707 S.W.3d 189, 201 (Tex. Crim. App. 2024). This is because without a record of the facts and circumstances in a particular case, courts cannot determine whether the law has been unconstitutionally applied to the

defendant. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) ("An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner."); *State v. Flores*, 679 S.W.3d 232, 244 (Tex. App.—San Antonio 2023, pet. ref'd) ("Without a fully developed record, precedent advises that it would be procedurally inappropriate for this court to address [an] as-applied preemption claim."). That is certainly the case here, where this Court has before it only the limited recitation of facts in Colunga's brief, noted above, and the district court had no evidence before it related to Colunga's alleged possession.

To the extent that Colunga was attempting to raise a facial challenge to the ban on possession, Colunga could prevail on such a claim only if he established that at the time of the alleged offense, the ban on THC possession would "always operate[] unconstitutionally in all possible circumstances." *See State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). "A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

Colunga failed to establish that here. Contrary to Colunga's contention, Texas law at the time of the alleged offense was not a "total ban" on THC possession. The statute under which Colunga was charged allowed a person to possess THC if "the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." Tex. Health & Safety Code § 481.116. Additionally, Texas law expressly allowed certain people to possess THC, including "a common or contract carrier, a warehouseman, or an employee of a carrier or warehouseman whose possession of the controlled

10

substance is in the usual course of business or employment," *id.* § 481.062(a)(2), and, "if the substance is tetrahydrocannabinol or one of its derivatives," "a practitioner or an ultimate user possessing the substance as a participant in a federally approved therapeutic research program," *id.* § 481.062(a)(5)(B); *see also id.* § 481.111 ("A person does not violate Section . . . 481.116 . . . if the person possesses or delivers tetrahydrocannabinols or their derivatives, or drug paraphernalia to be used to introduce tetrahydrocannabinols or their derivatives into the human body, for use in a federally approved therapeutic research program."). Under these sets of circumstances in which hemp possession was already legal in Texas at the time of the alleged offense, there would be no preemption by federal law.

Further, the 2018 Farm Bill expressly forbids states from "prohibiting the transportation or shipment of hemp or hemp products . . . through the State." Pub. L. No. 115-334 § 10114. Although some possession cases might also include the transportation or shipment of hemp, not all would, and in those cases, there would be no conflict between state and federal law. *See C.Y. Wholesale*, 965 F.3d at 547 (court concluded that it was "unconvinced that the express preemption clause, standing alone, precludes a state from prohibiting the possession and sale of industrial hemp within the state").

For these reasons, we cannot conclude that the district court abused its discretion in denying Colunga's pretrial application for writ of habeas corpus.

We overrule Colunga's first issue.

**Vagueness**

In his second issue, Colunga asserts that Texas's total ban on THC was unconstitutional because the law was "temporarily vague" after the Texas Department of State Health Services removed hemp from its schedule of controlled substances on March 15, 2019,

11

but before House Bill 1325 became effective on June 10, 2019. Colunga contends that during that time, Texas law "did not provide fair warning to an accused" of whether hemp remained illegal and "failed to provide boundaries and thus impermissibly delegated policy matters to law enforcement and courts."

Colunga did not raise this argument in the court below, either in his application for writ of habeas corpus or at the hearing on his application. Unless a statute has already been declared void, a challenge to the constitutionality of a statute as vague cannot be raised for the first time on appeal. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995); *Sony v. State*, 307 S.W.3d 348, 352-53 (Tex. App.—San Antonio 2009, no pet.). We conclude that this issue has not been preserved for our review. *See* Tex. R. App. P. 33.1(a)(1); *Sony*, 307 S.W.3d at 353.

We overrule Colunga's second issue.

## CONCLUSION

We affirm the district court's order denying habeas relief.

_____

Gisela D. Triana, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed: August 15, 2025

Do Not Publish

12